## COMMONWEALTH *vs.* THEODORO FIGUEROA.

Middlesex. February 3, 1992. - July 21, 1992.

Present: NOLAN, LYNCH, O'CONNOR, & GREANEY, JJ.

*Practice, Criminal*, Instructions to jury, Retroactivity of judicial holding. *Rape. Indecent Assault and Battery. Indecent Assault and Battery on a Retarded Person. Witness*, Child. *Evidence*, Fresh complaint, Hearsay, Failure to produce witness, Privileged communication. *Privileged Communication.*

At the trial of indictments charging rape and indecent assault and battery on a mentally retarded person, the judge properly exercised his discretion in refusing to give a special jury instruction concerning the credibility of a child witness, requested by the defendant for the reason that there was compelling evidence that the alleged victim witness had the mental age of a child, where the instructions as a whole permitted the jury to make a proper evaluation of the victim's testimony, and where the victim's credibility as a witness was highlighted and vigorously explored throughout the trial, and could not have failed to attract and engage the active consideration of the jury. [196-198]

At a criminal trial arising from rape and indecent assault and battery on a mentally retarded person in a van used for transporting students from school to on-the-job training, where the outcome turned on the credibility of the victim, the hearsay testimony of the victim's sister that the victim had told her that, when the sexual molestation took place in the van, other students "would tell him to stop and leave her alone," while error, added little or nothing to the victim's credibility with respect to her in-court account of the defendant's conduct as buttressed by other concededly admissible fresh complaint evidence and presented no substantial risk of a miscarriage of justice. [198]

At the trial of indictments charging rape and indecent assault and battery on a mentally retarded person, there was no error in the judge's refusal to give a missing witness instruction in reference to other individuals who the victim had testified were present during the alleged incidents, but who did not testify, where there was no evidence that those persons could have been located and brought forward by the prosecution, or that, in light of their retardation, they could have been expected to give important testimony; where there was no evidence that they were any more available to the Commonwealth than to the defendant; and where,

although in some circumstances a judge in his or her discretion may give a missing witness jury instruction, a party wishing such an instruction cannot require it of right. [198-199]

This court concluded that the rule announced in *Commonwealth* v. *Stockhammer*, 409 Mass. 867 (1991), allowing counsel to review the alleged victim's confidential records in sexual assault cases, should apply retroactively to a case involving rape and indecent assault and battery on a mentally retarded person, where the case was on direct appeal at the time the *Stockhammer* decision was issued and the record indicated that this issue was preserved at trial; moreover, defense counsel would be entitled to review the records concerning the victim's condition of retardation, to possibly cast doubt on the charge itself, and to search the records for evidence of how that impairment might affect her capacity to perceive, remember and articulate the alleged events. [200-204]

INDICTMENTS found and returned in the Superior Court Department on July 30, 1987.

The cases were tried before *James D. McDaniel, Jr.*, J.

The Supreme Judicial Court granted a request for direct appellate review.

*Peter M. Onek*, Committee for Public Counsel Services, for the defendant.

*Daniel A. Less*, Assistant District Attorney, for the Commonwealth.

O'CONNOR, J. After a jury trial in the Superior Court, the defendant was convicted of rape and indecent assault and battery on a mentally retarded person. The defendant appeals from his convictions, asserting that (1) the trial judge abused his discretion in refusing to give a special jury instruction on the credibility of a child witness; (2) the judge erroneously admitted in evidence the testimony of a fresh complaint witness concerning details not testified to by the alleged victim; (3) the judge incorrectly refused to give a requested missing witness jury instruction; and (4) the judge refused to give defense counsel access to Department of Social Services records and other documents concerning the alleged victim. We granted the defendant's application for direct appellate review. We affirm the convictions, but we

remand the case to the Superior Court to allow defense counsel to review the contested records and documents in accordance with such rules and orders as the trial judge (or another Superior Court judge) may issue for the purpose of minimizing breaches of confidentiality and the alleged victim's privacy. If such a review yields arguably significant exculpatory evidence, the defendant may move in the Superior Court for a new trial, which motion shall be heard in camera and shall otherwise be governed by the usual principles that apply to new trial motions.

The relevant evidence may be summarized as follows. The alleged victim, whom we shall call Sarah, in lieu of her real name, was a moderately retarded twenty-one year old woman at the time of the alleged crimes. She lived with her mother in Newton and had attended Newton public schools since she was four and one-half years old. Sarah was in her final year of a special needs program at Newton South High School at the time of the alleged criminal incidents. That program included both classroom work and on-the-job training. Sarah was picked up at her home in the morning by a van owned and operated by a private company. She and her classmates were taken to their morning jobs. They were brought to Newton South High School at noon, and they would be picked up again between 2:30 P.M. and 3 P.M. and driven home. Sarah generally got home around 4 P.M.

The defendant, known as "Ted," drove the van that took Sarah home at least three times a week and occasionally drove the van in the morning. Sarah was the last passenger to be dropped off in the afternoon. According to the Commonwealth's evidence, the events for which the defendant was being tried took place when Sarah was a front-seat passenger in the van and, on one occasion, in Sarah's home when no one but Sarah and the defendant were there. Defense witnesses, including the defendant, testified that Sarah never sat in the front seat of the van. There was also conflicting evidence about whether Sarah ever returned home to an empty house, and the defendant denied ever having touched Sarah or having been in her house. In addition, a defense

witness, a nonretarded student who also rode in the van, testified that Sarah had told her "some really weird stories," including that she had met "Wonder Woman" and had gone flying with "Superman." In connection with these stories, according to the witness, Sarah "was serious; she really believed it happened."

With the aid of anatomically correct dolls, Sarah testified in some detail to having been sexually assaulted by Ted several times in the van and once in her home. She did not identify the defendant at the trial although she testified over objection that she had seen "Ted" in the same courtroom one week earlier and it was the same "Ted" who had assaulted her. The evidence showed that no other bus driver named Ted transported Sarah. There also was evidence that the defendant had changed his appearance before trial by cutting his hair and shaving his beard. During her testimony, Sarah named five other retarded students who were in the van when the defendant allegedly assaulted her.

The prosecution introduced fresh complaint testimony by five witnesses. That testimony need not be repeated except for one statement made by Sarah's sister, Jennifer, which, the defendant argues here for the first time, was inadmissible. Jennifer testified, without objection, that, in describing the assaults, Sarah had told her that other students in the van "would tell him to stop and leave her alone."

1. *The Defendant's Request for a "Child Witness" Instruction to the Jury.*

The defendant requested the following jury instruction: "A child is not disqualified as a witness simply by reason of his age. There is no precise age which determines the competency of a child to testify. This depends on the capacity and intelligence of the child, his understanding of the difference between truth and falsehood, his appreciation of the duty to tell the truth, and in a general way, belief that failure to tell the truth will result in punishment.

"Children are likely to be more susceptible than adults. Moreover, children may not have a full understanding of the serious consequences of the charges they make. Therefore, in

evaluating the testimony of a child witness, you should consider not only the child's capacity to distinguish truth from falsehood, but also his ability to appreciate the seriousness of his testimony.

"As with other witnesses, you are the sole judges of the credibility of a child who testifies. In weighing his testimony, you may consider a number of factors in addition to his age. These factors include his demeanor on the stand, the manner of testifying, the capacity to observe and remember facts; the ability to understand the questions asked and to answer those questions intelligently; whether the child impressed you as being a truth-telling individual; and any other facts and circumstances which impress you as significant in determining his credibility. On the basis of your consideration you may give the testimony of the child such weight as you feel it is fairly entitled to receive." See *Commonwealth* v. *Avery*, 14 Mass. App. Ct. 137, 140-141 n.2 (1982).

The defendant argues that, because there was compelling evidence that the alleged victim witness had the mental age of a child, and because, due to her cognitive limitations, her testimony was unreliable and cross-examination was difficult, and also because there were no other eyewitnesses who testified to the alleged assaults, the judge was required to give the requested instruction. We disagree. The judge advised the jury that, as the sole assessors of credibility, they could take into account the demeanor of the witness, whether the witness was trying to be candid or was attempting to "cloud the issues," the accuracy of the witness's recollection, the degree of intelligence shown by the witness, the witness's motive in testifying, and the probability and reasonableness of the witness's testimony. The judge further instructed the jury that they "may also consider the intelligence of the particular witnesses who have testified and their ability or capacity to relate to you the matters to which they testify in court." In view of those instructions, and in light of the fact that Sarah's credibility as a witness "was highlighted and vigorously explored throughout the trial, and could not have failed to attract and engage the active consideration of the jury,"

*Commonwealth* v. *A Juvenile*, 21 Mass. App. Ct. 121, 125 (1985), we conclude that the judge properly exercised his discretion in declining to give the particularized instruction requested by the defendant and thereby avoiding the risk of intrusion on the jury's role as arbiter of the facts by singling out a particular witness's testimony for special scrutiny. See *Commonwealth* v. *Avery, supra* at 142.

2. *The Fresh Complaint Testimony.*

. We reject the defendant's argument that a substantial risk of a miscarriage of justice occurred, see *Commonwealth* v. *Mamay*, 407 Mass. 412, 418 (1990), when the judge admitted in evidence without objection the testimony of Sarah's sister, Jennifer, that Sarah had told her that, when the sexual molestation took place in the van, other students "would tell him to stop and leave her alone." That testimony did not constitute fresh complaint evidence. It was not an account of a complaint by Sarah concerning the defendant's offensive sexual conduct or anything the defendant said. Rather, as an account of the reaction of third persons to the defendant's conduct, it was mere hearsay that would not have been admissible under the Commonwealth's fresh complaint rule even if, contrary to the defendant's contentions, it did not substantially exceed the scope of Sarah's testimony.

The evidence was inadmissible. However, its admission did not create a substantial risk of a miscarriage of justice, and therefore the error in admitting it was not reversible. The case turned on the credibility of Sarah. Surely, evidence of her out-of-court statements that others in the van "would tell [the defendant] to stop and leave her alone," added little or nothing to Sarah's credibility with respect to her in-court account of the defendant's conduct as buttressed by the concededly admissible fresh complaint evidence. Jennifer's testimony was not "used as hearsay to fill gaps in the prosecution's case." *Commonwealth* v. *Scanlon*, 412 Mass. 664, 670 (1992).

3. *The Missing Witness Instruction.*

The defendant challenges the judge's denial of his request for a missing witness instruction in reference to the other stu-

dents who Sarah had testified were in the van during the alleged incidents, but who did not testify. "Where a party has knowledge of a person who can be located and brought forward, who is friendly to, or at least not hostilely disposed toward, the party, and who can be expected to give testimony of distinct importance to the case, the party would naturally offer that person as a witness. If, then, without explanation, he does not do so, the jury may, if they think reasonable in the circumstances, infer that person, had he been called, would have given testimony unfavorable to the party. . . . Because the inference, when it is made, can have a seriously adverse effect on the noncalling party — suggesting, as it does, that the party has wilfully attempted to withhold or conceal significant evidence — it should be invited only in clear cases, and with caution." *Commonwealth* v. *Schatvet*, 23 Mass. App. Ct. 130, 134 (1986). There was no evidence in this case that the other students could have been located and brought forward by the prosecution, or that, in light of their retardation, they could have been expected to give important testimony. Thus, no inference favorable to the defendant would have been permissible from the Commonwealth's failure to produce those witnesses. Furthermore, "[m]any of our decisions have indicated that, where a witness is equally available to both sides of a dispute, no inference should be drawn against either side for failing to call the witness." *Commonwealth* v. *Cobb*, 397 Mass. 105, 108 (1986). There was no evidence here that the students were any more available to the Commonwealth than to the defendant. On the contrary, the record shows that, before the trial, the prosecutor furnished the names and addresses of at least four of the five students to the defendant. Finally, and conclusively, although in some circumstances a judge in his or her discretion may give a missing witness jury instruction, "a party who wishes the instruction cannot require it of right." *Commonwealth* v. *Anderson*, 411 Mass. 279, 283 (1991), citing 2 C.A. Wright, Federal Practice and Procedure § 489 (2d ed. 1982). There was no error in the judge's refusal to give a missing witness instruction.

4. *Access to the Alleged Victim's Records.*

Before the trial, the defendant moved that the Department of Social Services (DSS) be required to provide the defendant with all reports and records containing relevant evidence concerning Sarah and her family, including reports alleging child abuse filed pursuant to G. L. c. 119, §§ 51A and 51B. The judge denied that motion "without prejudice to renew at trial on a proper showing of need." The judge ordered that the requested records be subpoenaed and impounded by the court for future use if appropriate. The record does not show whether there were any DSS records or whether such records were ultimately received by the court.

The defendant also moved that the court order the Department of Mental Health (the motion was subsequently amended to refer to the Department of Mental Retardation [DMR]) to provide defense counsel with all its records concerning Sarah, including records of psychiatric or psychological evaluations or examinations. The judge ordered that DMR records from 1985 until March 30, 1988, the date of the order, be delivered to the court "for an in camera inspection by a Judge of the Superior Court." After reviewing the three pages of records delivered pursuant to that order, the judge ruled that they were privileged and not discoverable.

Lastly, the defendant moved that the judge order the Commonwealth to provide for the purpose of discovery "[a]ll records concerning the mental condition of [Sarah], including but not limited to all [St. 1972, c.] 766 reports and evaluations, records [of] psychiatric and psychological testing, and teachers notes." The judge ordered that any records concerning Sarah kept by the Newton school department, the Charles River Workshop, Children's Hospital, and Kennedy Memorial Hospital for Children, for the period from 1985 through March 30, 1988, be delivered to the court for an in camera inspection by a judge. The judge reviewed the Newton public schools and Charles River Workshop records and released parts of them to the defendant and withheld other parts as privileged.

On May 1, 1991, after the trial of the instant case, this court decided *Commonwealth* v. *Stockhammer*, 409 Mass. 867 (1991). In *Stockhammer*, we reversed the defendant's convictions of rape and assault with intent to commit rape on the ground that the judge had incorrectly limited the defendant's cross-examination of the complainant. *Id.* at 875-880. Also, for purposes of the anticipated retrial, we discussed the question whether the defendant would be entitled to have his counsel examine the records of the New York Hospital-Cornell Medical Center, at which the alleged victim had received treatment approximately ten months after the alleged sexual assaults, and of a Greenwich, Connecticut, social worker who had counseled the alleged victim following that hospital treatment. We concluded that "under art. 12 of the Massachusetts Declaration of Rights, counsel for the defendant [was] entitled to review the records of the complainant's treatment at the New York Hospital and with the Greenwich, Connecticut, social worker to search for evidence of bias, prejudice, or motive to lie. On remand, the judge shall determine the circumstances under which counsel for the defendant and the Commonwealth shall review the records. The judge then shall conduct an in camera hearing concerning the admissibility of any information in the records that counsel may wish to use at trial. In his discretion, the judge also shall enter any orders that are deemed appropriate to ensure that the information contained in the records will not be disclosed beyond the defendant's need to prepare and present his defense." *Id.* at 884.

If the *Stockhammer* principle concerning defense counsel's access to privileged records concerning an alleged victim of sexual crimes applies retroactively to the present case, two results follow: (1) defense counsel, not just the judge, must have access to the numerous records involved here to determine whether they contain information that may be useful to the defense, including evidence not just of bias, prejudice, or a motive to lie on the part of the complaining witness, but also evidence related to her mental impairment, and (2) since this is a sexual assault case in which the credibility of the

alleged victim is critical, such review must be made available to counsel without any prior showing by the defendant of special circumstances demonstrating a particularized need for access to the communications. With respect to the latter requirement, *Stockhammer* represents a departure from the earlier rule set forth in *Commonwealth* v. *Two Juveniles*, 397 Mass. 261, 269 (1986) ("Before any in camera inspection of the privileged material can be justified, the defendant must show a legitimate need for access to the communications. It is not sufficient that, as is apt to be the case where [G. L. c. 233,] § 20J applies, the very circumstances of the communications indicate that they are likely to be relevant and material to the case. Likewise, the unavailability of the information from another source will not be sufficient to establish a legitimate need").

We agree with the defendant that the rule announced in *Stockhammer*, *supra* at 884, that allows counsel to review the alleged victim's confidential records in sexual assault cases should apply retroactively to this case. "Retroactive application of a rule of criminal law is indicated if (1) a case is on direct appeal or as to which time for direct appeal has not expired when the new rule is announced, and (2) the issue was preserved at trial." *Commonwealth* v. *Libran*, 405 Mass. 634, 645 (1989), quoting *Commonwealth* v. *Bellamy*, 391 Mass. 511, 515 (1984). *Commonwealth* v. *Pidge*, 400 Mass. 350, 354 (1987). See *Commonwealth* v. *Bray*, 407 Mass. 296, 298-299 (1990), which discusses the sharp distinction made by the United States Supreme Court in *Griffith* v. *Kentucky*, 479 U.S. 314, 322-323 (1987), between the retroactive application of new criminal rules to cases either on direct review or in which the conviction was not yet final, and cases on collateral review. In *Bray*, *supra* at 299, the court quoted the Supreme Court in *Griffith*, *supra* at 323, saying " 'selective application of new rules,' the [*Griffith*] Court concluded, 'violates the principle of treating similarly situated defendants the same.' " Because this case was on direct appeal at the time the *Stockhammer* decision was issued and the record indicates that this issue was preserved at trial, we hold

that the defendant is entitled to the benefit of the rule announced in *Stockhammer.*

We also agree that, where one of the charges is indecent assault and battery on a mentally retarded person, defense counsel must be entitled to review the records concerning the complaining witness's condition of retardation, to possibly cast doubt on the charge itself. Moreover, where the complaining witness is suffering from mental impairment, defense counsel must also be allowed to search the records for evidence of how that impairment might affect her capacity to perceive, remember and articulate the alleged events. This type of evidence, like evidence of bias, prejudice, or a motive to lie, can be used to impeach the credibility of the complaining witness. See *Commonwealth* v. *Caine*, 366 Mass. 366, 369 (1974).

Our discussion concerning access to records applies to those records, and parts of records, that are privileged pursuant to the psychotherapist-patient privilege provided in G. L. c. 233, § 20B (1990 ed.), the social worker-client privilege under G. L. c. 112, § 135A (1990 ed.), the special education records privilege under G. L. c. 71B, § 3 (1990 ed.), and the privilege with respect to DMR records provided by G. L. c. 123B, § 17 (1990 ed.). In addition to being entitled to review Sarah's confidential records under the *Stockhammer* rule, the defendant is entitled to access to reports and records generated by DSS when conducting investigations under G. L. c. 119, § 51B (1990 ed.), for another reason. Those records and reports are subject to an exception to the social worker-client privilege contained in c. 112, § 135A (*f*) (the privilege applies except "where the social worker has acquired the information while conducting an investigation pursuant to section fifty-one B of chapter one hundred and nineteen"). See *Commonwealth* v. *Jones*, 404 Mass. 339, 341 (1989).

We affirm the convictions. However, we remand this case to the Superior Court where, subject to appropriate orders to ensure that there is no unnecessary disclosure of confidential information, defense counsel and the prosecutor may review

the various records at issue here. After such a review, the defendant may seek a new trial in the usual manner.

*So ordered.*