## COMMONWEALTH *vs.* THEODORO FIGUEROA.

Middlesex. November 6, 1995. - February 12, 1996.

Present: LIACOS, C.J., WILKINS, ABRAMS, O'CONNOR, & GREANEY, JJ.

*Practice, Criminal,* New trial, Judicial discretion, Disclosure of evidence. *Evidence,* Medical record.

In the circumstances of a rape case, the matter was remanded for an evidentiary hearing on the defendant's motion for a new trial, before which the defendant was to investigate newly available Department of Mental Retardation records of the complaining witness to determine whether such material is admissible evidence or could lead to admissible evidence sufficient to warrant a new trial. [75-79]

INDICTMENTS found and returned in the Superior Court Department on July 30, 1987.

A motion for a new trial, filed on May 31, 1994, was heard by *James D. McDaniel, Jr.,* J.

The Supreme Judicial Court granted an application for direct appellate review.

*Peter M. Onek,* Committee for Public Counsel Services, for the defendant.

*Barbara F. Berenson,* Assistant District Attorney, for the Commonwealth.

ABRAMS, J. The defendant, Theodoro Figueroa, was convicted, after a jury trial, of rape and indecent assault and battery on a mentally retarded person. The defendant appealed from his convictions asserting, inter alia, that the judge's refusal to allow defense counsel access to the complaining witness's Department of Mental Retardation (DMR) records was error. We affirmed the convictions, *Commonwealth* v. *Figueroa,* 413 Mass. 193 (1992), but, applying *Commonwealth* v. *Stockhammer,* 409 Mass. 867 (1991),[1] retroactively, remanded the case to the Superior Court to al-

---

[1]*Commonwealth* v. *Stockhammer,* 409 Mass. 867, 884 (1991), held that under art. 12 of the Massachusetts Declaration of Rights, counsel for a criminal defendant is entitled to review a complainant's treatment records to search for evidence of bias, prejudice, or motive to lie.

low defense counsel to review the contested records and documents. The defendant moved for a new trial on the basis of information contained in the records. His motion for a new trial was denied by the same Superior Court judge who presided over the trial. The defendant now appeals from that denial, contending that the information contained within the DMR records warrants a new trial.[2] We allowed the defendant's application for direct appellate review. We remand this matter to the trial judge for an evidentiary hearing, after the defendant has had time to investigate the new material.

The relevant facts may be briefly summarized.[3] The complaining witness, whom we shall call Sarah, in lieu of her real name, was a moderately retarded twenty-one year old woman at the time of the alleged crimes. She lived with her mother in Newton and attended Newton public schools. She was in her final year of a special needs program at Newton South High School.

Sarah was regularly transported home from school by a van owned and operated by a private company, Park Transportation. The defendant, known as "Ted," drove this van at least three times a week. Sarah was the last passenger to be dropped off in the afternoon and usually arrived home at approximately 4 P.M. According to the Commonwealth's evidence at trial, the alleged criminal events took place on a number of occasions when Sarah was a front-seat passenger in the van and, on one occasion, in Sarah's home when no one else was home. At trial, there was conflicting testimony presented whether Sarah ever sat in the front seat of the van and whether she ever returned home to an empty house. The defendant argued at trial that, because of her mental impairment, Sarah's testimony lacked credibility. A defense witness testified that Sarah told "some really weird stories" about meeting Wonder Woman and Superman and that Sarah "was serious; she really believed it happened." The prosecution presented fresh complaint testimony of four witnesses, testimony from Sarah's mother, and testimony from Sarah. This court concluded in *Commonwealth* v. *Figueroa, supra* at 198, that "[t]he case turned on the credibility of Sarah."

---

[2]The defendant does not here challenge the judge's denial of his motion as to the other records that had been withheld from defense counsel at the time of trial.

[3]For a fuller description of the facts, see *Commonwealth* v. *Figueroa,* 413 Mass. 193 (1992).

Prior to trial, the defendant moved that the court order the Department of Mental Health (DMH) (the motion was subsequently amended to refer to the DMR) to provide defense counsel with all its records concerning Sarah, including records of psychiatric or psychological evaluations or examinations.[4] The judge ordered that DMR records from 1985 until March 30, 1988, the date of the order, be delivered to the court for an "in camera inspection by a Judge of the Superior Court." Three pages of records were delivered pursuant to that order. The judge reviewed these records and ruled that they were "privileged and/or confidential" and did not contain admissible evidence.

The relevant records were resubpoenaed[5] after this court's decision in *Figueroa, supra* at 203, in which we held that "where one of the charges is indecent assault and battery on a mentally retarded person, defense counsel must be entitled to review the records concerning the complaining witness's condition of retardation, to possibly cast doubt on the charge itself. Moreover, where the complaining witness is suffering from mental impairment, defense counsel must also be allowed to search the records for evidence of how that impairment might affect her capacity to perceive, remember and articulate the alleged events."

After reviewing these records, the defendant moved for a new trial, asserting that the records "would have lent crucial support to counsel's efforts to cast doubt on [Sarah's] credibility." The defendant principally relies on the following entry in a DMR record dated March 10, 1987, and entitled "Progress Notes" as support for his motion for a new trial:

"Roberta Lewonis relayed a phone call from [Sarah's

---

[4]The defendant also moved for an order requiring the Commonwealth to produce records from the Newton school department, the Charles River Workshop, Children's Hospital, and Kennedy Memorial Hospital for Children.

[5]Because the records previously ordered by the judge and reviewed in camera could not be located in the Superior Court criminal clerk's office, the records were resubpoenaed. The trial judge previously had reviewed only three pages of DMR records. One hundred thirty-five pages of records were received pursuant to the second subpoena and reviewed by the prosecutor and defense counsel. This discrepancy is not explained. It is thus uncertain whether the evidence the defendant relies on in support of his motion for a new trial previously was withheld as privileged by the judge or whether it is newly discovered.

mother] regarding suspected sexual abuse/inappropriate touching in her cab (school). I contacted Valerie Ardi of Newton Special Ed Dept who was aware of the complaint. She put me in touch with Valerie North . . . who is in charge of transportation. The following is the information that she related:

"— [Sarah's mother] 1st contacted office in early January to relate [Sarah's] reluctance.

"— Valerie contacted driver, Paul, who agreed she ([Sarah]) appeared reluctant + volatile but gave no hint of anything else.

"— [Sarah's mother] said [Sarah] may have fantasized

"— [Sarah's mother] recontacted Valerie in late January relating suspicions regarding another driver, Ted.

"— Ted was removed pending investigation (he has been very reliable driver)

"— Park Trans. manager interviewed (1) Ted - felt there was nothing suspicious, (2) interviewed [Sarah's] teacher (Tony P.) and kids - nothing conclusive

"— Ted is being monitored

"— legal dept has formal notification

"(My opinion: it is always difficult to discern the truth in these situations. Since so many people (incl. teacher + kids) were interviewed with no validation of incident(s), and the driver is being monitored, I think the situation is being handled appropriately).

"Eleanor Sullivan

"MR Coordinator"

Defense counsel contends that this record "strongly suggests" that the family's suspicions initially focused on a driver other than the defendant or at least that the focus on the defendant was delayed. He argues that, although the record is

concededly inadmissible multiple level hearsay, had he known of its existence, he could have used it to cross-examine the victim, her sisters, and her mother[6] and could have investigated the matter further before trial and, perhaps, could have unearthed admissible evidence. Defense counsel argues that had he known of the above-quoted entry, he would have interviewed Valerie North and perhaps would have called North to testify. He further argues that had he known of Sarah's mother's alleged statement, he could have cross-examined Sarah's mother and other prosecution witnesses on Sarah's propensity and ability to fantasize about such matters. The defendant was not precluded at trial from arguing that Sarah may have fantasized the attack. He had both motive and opportunity to inquire into the possibility that Sarah may have fantasized.[7] The subject of Sarah's ability to fantasize was briefly discussed at trial. Sarah's therapist, when questioned about Sarah's ability to fantasize, opined that Sarah had limited ability to engage in play fantasy. Nothing precluded the defendant from questioning Sarah's therapist further or questioning any other witness about Sarah's ability to fantasize about painful personal events. As we discussed

[6]The defendant is incorrect in his assumption that if Sarah's mother denied having made the communication depicted in the record, defense counsel could have sought to introduce the record for impeachment purposes. Before the defendant could introduce the record as impeachment, he would need to prove that the mother made that statement. Even for the limited, nonsubstantive, purpose of impeachment, the record must be attributable to the witness before it may be used. *Wingate* v. *Emery Air Freight Corp.*, 385 Mass. 402, 405 (1982). *Commonwealth* v. *Beauregard*, 25 Mass. App. Ct. 983 (1988). Statements that Sarah's mother allegedly made to someone in Valerie North's office which North relayed to Eleanor Sullivan who recorded them almost two months after the fact cannot credibly be attributed to Sarah's mother. The statements are inadmissible, even for impeachment purposes.

[7]The defendant contends that he did not pursue this line of inquiry because the Commonwealth indicated, in response to the defendant's "motion for exculpatory evidence — prior complaint(s) of rape or sexual abuse by alleged victim," that there were no known prior complaints. This argument is wholly without merit. We note first that defense counsel still does not contend that there have been any prior false complaints of rape or sexual abuse made by Sarah. The Commonwealth could answer the defendant's motion in the same way today. Second, that Sarah had not made any prior false complaints does not foreclose defense counsel from pursuing the issue whether she had ever fantasized about sexual matters. The defendant's attempt to equate prior false complaint of rape known to the prosecutor with a fantasy about sexual abuse is unconvincing.

*supra,* note 6, the defendant's argument that had he had access to the record, he could have more pointedly questioned Sarah's mother and used the record for impeachment is misplaced. A flat denial by Sarah's mother would leave the defendant in the same position now as before discovery of the record. Defense counsel has no additional admissible support for the contention that Sarah may have fantasized. Reliance on inadmissible hearsay statements is not sufficient foundation for a motion for a new trial. "[T]he defendant must demonstrate an adequate factual basis for his claim." *Commonwealth* v. *Trung Chi Truong,* 34 Mass. App. Ct. 668, 675 (1993). The defendant must do more than allege that at a new trial he might be able to call a witness who might be able to offer relevant, admissible evidence. Before the statement is admissible for impeachment purposes, the defendant must satisfy the judge, through admissible evidence, that the statement "[Sarah] may have fantasized" can be attributed directly to Sarah's mother.

A defendant's constitutional rights do not require a new trial in all circumstances where he was denied access to potentially exculpatory psychiatric records. All that is required is that defense counsel be allowed access to such records and a defendant be afforded the opportunity to move for a new trial "which motion shall be heard in camera and shall otherwise be governed by the usual principles that apply to new trial motions." *Figueroa, supra* at 195.[8]

The decision to grant a motion for a new trial lies within the sound discretion of the trial judge. *Commonwealth* v. *Moore,* 408 Mass. 117, 125 (1990). The decision of the motion judge is entitled to special deference if that judge also was the trial judge. *Commonwealth* v. *Dascalakis,* 246 Mass. 12, 32-33 (1923), and cases therein cited. The decision whether to hold an evidentiary hearing on a new trial motion also is within the sound discretion of the judge. Mass. R. Crim. P. 30 (c) (3), 378 Mass. 900 (1979). *Commonwealth* v. *Gagliardi,* 418 Mass. 562, 572 (1994), cert. denied, 115 S. Ct. 753 (1995). He or she must consider whether a substantial issue necessitating a hearing has been raised, looking to the seriousness of the claim presented and

---

[8]The "usual principles" are that a judge "may grant a new trial at any time if it appears that justice may not have been done." Mass. R. Crim. P. 30 (b), 378 Mass. 900 (1979). "New trials should not be granted except for substantial reasons." *Commonwealth* v. *Tucceri,* 412 Mass. 401, 406 (1992).

the adequacy of the defendant's factual showing. *Commonwealth* v. *Trung Chi Truong, supra* at 674.

The judge below exercised his discretion not to hold an evidentiary hearing. Ordinarily, we would not disturb that decision. We think, however, that our decision in the direct *Figueroa* appeal may not have been clear that prior to moving for a new trial the burden is on the defendant to investigate any new material to determine whether such material is admissible in evidence or could lead to admissible evidence sufficient to warrant a new trial. Because of the possibility of confusion, we conclude that we should remand for an evidentiary hearing on the motion for a new trial.

On remand, the motion judge should employ the standard for newly discovered evidence. This is appropriate because the trial judge acted in accordance with the then-applicable law in denying defense counsel access to the DMR records. See *Figueroa, supra* at 202-203. See also *Commonwealth* v. *Daye,* 411 Mass. 719, 734-735 (1992) (because defendant had no right to report prior to trial, the report is treated as newly discovered evidence). At the time of trial, the defendant had no constitutional right to access to the DMR records. *Commonwealth* v. *Two Juveniles,* 397 Mass. 261, 269 (1986). Although our decision in *Commonwealth* v. *Stockhammer, supra,* announced a new rule governing admissibility of otherwise privileged psychiatric records,[9] and was applied retroactively to this case, see *Figueroa, supra,* it does not alter the appropriateness of the judge's ruling when made. As the information contained within the DMR records was unknown to the defendant at the time of trial, it is properly regarded as

---

[9]The ruling in *Commonwealth* v. *Stockhammer, supra,* represented a departure from previous Massachusetts law and from the Federal law regarding a defendant's right to access privileged psychiatric records of the complaining witness in a sexual assault case. See *Commonwealth* v. *Two Juveniles,* 397 Mass. 261, 269 (1986). See also *Pennsylvania* v. *Ritchie,* 480 U.S. 39 (1987). Post-*Stockhammer,* this court has recognized the importance of confidentiality between survivors of sexual assault and counsellors and has held that defense counsel does not have an unqualified right of access to the survivor's privileged records. *Commonwealth* v. *Bishop,* 416 Mass. 169 (1993). *Bishop, supra* at 181-183, resurrected in camera review to determine whether records are relevant and held that defense counsel has a right to view only relevant records. See *Commonwealth* v. *Jones,* 34 Mass. App. Ct. 683 (1993).

newly discovered evidence.[10] See *Commonwealth* v. *Simmons,* 417 Mass. 60, 71 (1994) ("For purposes of this decision, we shall assume that newly 'available' evidence is like newly 'discovered' evidence and is subject to the same rules").

The appropriate standard for newly discovered evidence is whether "there is a substantial risk that the jury would have reached a different conclusion had the evidence been admitted at trial." *Commonwealth* v. *Grace,* 397 Mass. 303, 306 (1986). On remand, the defendant must establish that the evidence "casts real doubt on the justice of the conviction. . . . The evidence said to be new not only must be material and credible . . . but also must carry a measure of strength in support of the defendant's position." *Commonwealth* v. *Scanlon,* 412 Mass. 664, 679-680 (1992), quoting *Grace, supra* at 305. The defendant hypothesizes that "investigative efforts based on the information in the DMR record might have resulted in the introduction of other valuable information." This is insufficient to cast real doubt as to the justice of the conviction. We remand to the trial judge for an evidentiary hearing, before which the defendant must investigate the leads and at which he must produce such admissible evidence as he has obtained, subject to cross-examination by the Commonwealth to determine whether the new evidence meets the standards for a new trial. The denial of the motion for a new trial is reversed. This matter is remanded to the Superior Court for further proceedings.

*So ordered.*

---

[10]As discussed *supra* at note 5, the evidence may indeed be newly discovered rather than newly available.