After a jury trial, the defendant was convicted of assault and battery by means of a dangerous weapon (ABDW) upon a person who is pregnant, and assault and battery upon a person who is pregnant.[2] He asserts several trial errors. We affirm.
Background. The jury could have found the following facts. The victim was in a relationship with the defendant's recently-deceased brother until his death in January, 2009. Shortly after the brother's death, the victim and the defendant began a romantic relationship. Roughly two years later, in March, 2011, the victim learned she was pregnant with the defendant's child. The defendant indicated his desire for the victim to get an abortion,[3] which the victim initially agreed to on the condition that the defendant pay for it. The victim was never given the money, and after the defendant ended the relationship, the victim decided that she was going to have the baby.
On May 25, 2011, roughly one month after the defendant ended the relationship, he knocked on the victim's door. She was five months pregnant at the time. After asking her, "What did I tell you to do with the baby?," the defendant began an assault on the victim that included a kick to her stomach, punches to the stomach, and attempts to choke the victim. The victim testified that the attack was centered around her stomach and stated that the defendant seemed to be attempting to "crush" her stomach. The defendant prevented the victim from escaping the apartment three separate times, grabbing her by the hair, striking her head off the door, and causing her to fall to the floor. While she was on the floor, the defendant pressed his fingers into her stomach and pressed on her back with his knees to the point the victim felt he was trying "to pop [her stomach like] a balloon." There was also evidence presented that the defendant choked the victim with her necklace during the attack.
The victim eventually escaped to the parking lot of her apartment with visible injuries. After initially refusing medical treatment, the victim went to the emergency room thirty to forty minutes later to be evaluated. She was seen by Dr. Daniel Cohen and a nurse, Stephen Oullette. Oullette testified at trial that the victim complained of pain in her neck and abdomen and had scrapes and bruises on her neck and right forearm.
In addition to charges stemming from the assault detailed above, the defendant was indicted for, and acquitted of, witness intimidation. On the morning of a scheduled trial date in the assault case,[4] the victim was dropped off at the rear of the courthouse by a taxi. While waiting for the door to be unlocked, she heard the defendant speak to her in Spanish from a transport van, "telling [her] to leave, not to be here, not to do that to him, that he's young and ... he doesn't want to spend his time in jail, so to please leave."
The defendant contends a series of errors occurred at trial, as follows: (1) the judge abused her discretion in failing to give a missing witness instruction for two potential witnesses and declining to give a specific unanimity instruction; (2) the judge erred in failing to redact a portion of the victim's medical records that indicated that she had a contusion on her abdomen; (3) the joinder of the assault charges and witness intimidation charge was error; (4) the Commonwealth's late disclosure of a witness and evidence was a constitutional violation; and (5) his ABDW and simple assault and battery convictions were duplicative.
Discussion. 1. Jury instructions. At trial, the defendant requested that the judge give a missing witness instruction and a specific unanimity instruction. Each request was denied. First, the defendant sought a missing witness jury instruction to explain the absence of testimony from both Dr. Cohen, who treated the victim at the hospital, and Sergeant Jose Martinez, who was first to arrive to the scene of the crime and who was the supervising officer during the shift the assault occurred. The judge denied the request after determining that only duplicative evidence would have been introduced through those two witnesses and there was nothing to suggest that the witnesses were not available to each party. The defendant further pursued a specific unanimity instruction, which the judge denied, instead giving a general unanimity instruction.
We review the judge's refusal to give the requested jury instructions for abuse of discretion, which occurs when a judge makes " 'a clear error of judgment in weighing' the factors relevant to the decision ..., such that the decision falls outside the range of reasonable alternatives." L.L. v. Commonwealth, 470 Mass. 169, 185 n.27 (2014) (citation omitted). See Commonwealth v. Williams, 475 Mass. 705, 721 (2016).
a. Missing witness. A missing witness instruction is appropriate "[w]here a party has knowledge of a person who can be located and brought forward, who is friendly to, or at least not hostilely disposed toward, the party, and who can be expected to give testimony of distinct importance to the case, [and] the party would naturally offer that person as a witness. If, then, without explanation, he does not do so, the jury may, if they think reasonable in the circumstances, infer that person, had he been called, would have given testimony unfavorable to the party." Commonwealth v. Figueroa, 413 Mass. 193, 199 (1992), quoting from Commonwealth v. Schatvet, 23 Mass. App. Ct. 130, 134 (1986). "There is no basis for any such inference when it appears that the testimony would be unimportant-merely corroborative of, or merely cumulative upon, the testimony of one or more witnesses who have been called." Schatvet, supra. "Because the inference, when it is made, can have a seriously adverse effect on the noncalling party, ... it should be invited only in clear cases, and with caution." Figueroa, supra, quoting from Schatvet, supra.
In rejecting the defense's request for missing witness instructions for both Dr. Cohen and Sergeant Martinez, the judge reasoned "that there is no showing that the witness[es] w[ere] not available to each party. I find that any evidence that would have been given or expected to be given would have been cumulative in nature. And it would not have had distinct importance to the case." We conclude that the judge's decision was warranted, and well within the "range of reasonable alternatives." L.L., supra. Oullette, who treated the victim in the emergency room as a nurse, testified in Dr. Cohen's place when it proved too difficult to produce the doctor due to unforeseen scheduling conflicts.[5] Dr. Cohen was known to the defense as well as the prosecution, and likely would have provided largely cumulative testimony to that of Oullette. See Commonwealth v. Saletino, 449 Mass. 657, 668 n.17 (2007) (citations omitted) (while not a "hard and fast rule," "where a witness is 'equally available to parties on both sides of a dispute, no inference should be drawn against either side for failing to call the witness' "). Similarly, while Sergeant Martinez outranks Lawrence police Officer Paul Plantamura, who testified at trial, it was Officer Plantamura who wrote the police report and applied for the arrest warrant. There is nothing to suggest that Sergeant Martinez's testimony would have furthered the case, and Officer Plantamura's was more relevant as he was more heavily involved in the investigation. Bearing in mind that judges are to approach missing witness instructions with particular caution, there was no error in the judge's refusal to include such an instruction. See Figueroa, supra.
b. Specific unanimity. The defendant further asserts that he was entitled to a specific unanimity instruction on his indictment for assault and battery on a pregnant person, one of the two indictments on which he was convicted. "[A] specific unanimity instruction indicates to the jury that they must be unanimous as to which specific act constitutes the offense charged." Commonwealth v. Shea, 467 Mass. 788, 798 (2014), quoting from Commonwealth v. Conefrey, 420 Mass. 508, 512 (1995). "An instruction on specific unanimity is warranted 'when, on a single charged offense, the prosecutor presents evidence of separate, discrete incidents, any one of which would suffice by itself to make out the crime charged. There, in order to find the defendant guilty of the charged offense, the jury must all agree as to at least one, specific incident.' " Shea, supra, quoting from Commonwealth v. Santos, 440 Mass. 281, 284-285 (2003). "However, '[w]hen a single count is charged and where the spatial and temporal separations between acts are short, that is, where the facts show a continuing course of conduct, rather than a succession of clearly detached incidents, a specific unanimity instruction is not required.' " Shea, supra, quoting from Santos, supra at 285.
The defendant contends that he was entitled to a specific unanimity charge because the Commonwealth presented evidence of several individual acts, each of which could have been grounds for the assault and battery conviction. Specifically, the defendant points to evidence of him squeezing and pushing on the victim's stomach, kicking and punching the victim while on the floor, kicking the victim's stomach as she attempted to flee, striking the victim's head off the door, and choking the victim with her necklace. Three of those discrete incidents served as grounds for the three separate ABDW indictments: shod foot, striking the victim's head off the door, and choking the victim with her necklace.[6] As such, the judge was warranted in refusing to offer a specific unanimity instruction for the assault and battery charge as the events were not charged as separate ABDW incidents, but were part of a continuous, spatially and temporally related attack. See Shea, supra. There was no abuse of discretion in the judge's jury instructions.
c. Duplicative convictions. The defendant raises a third issue relating to the judge's jury instructions, asserting error in the judge's failure to instruct the jury that convictions for assault and battery and ABDW must be based on separate and distinct acts. We disagree. The judge denied the defendant's request for the verdict slip on the assault and battery charge to specify that this charge related solely to whether the defendant pushed on the victim's stomach while he was on top of her. As that request did not preserve the issue now challenged, we review for a substantial risk of a miscarriage of justice. See Shea, supra at 790-791. If the judge does not instruct the jury that they must find that "the defendant committed separate and distinct criminal acts to convict on the different charges," a lesser included offense would be vacated "if there is any significant possibility that the jury may have based convictions of greater and lesser included offenses on the same act or series of acts." Commonwealth v. Kelly, 470 Mass. 682, 700 (2015).
Having reviewed the record with a particular focus on the judge's jury instructions, we conclude there was no "significant possibility that the jury may have based" the ABDW and assault and battery convictions "on the same act or series of acts." Kelly, supra. In instructing the jury on the three separate counts of ABDW, the judge clearly stated that the jury "must consider and decide each indictment separately" before instructing on the elements of assault and battery. The jury's understanding that different convictions must be based on separate facts is evidenced by the defendant being convicted only of ABDW, shod foot, while being acquitted of the remaining ABDW charges. That, plus the ample additional evidence to support the assault and battery conviction beyond the shod foot evidence, supports the conclusion that there was no "significant possibility" the convictions stemmed from the same act, and certainly no substantial risk of a miscarriage of justice.
2. Medical records. The defendant further asserts that the judge erred in failing to redact a notation made by Dr. Cohen on the victim's medical records that indicated that the victim had a contusion on her abdomen.[7] As provided in G. L. c. 233, § 79, as appearing in St. 1957, c. 200, "[r]ecords kept by hospitals" shall be admissible "so far as such records relate to the treatment and medical history" of the patient. "Such records are presumed reliable because they are made by medical professionals 'charged with the responsibility of making accurate entries ... relied on in the course of treating patients.' " Commonwealth v. Palacios, 90 Mass. App. Ct. 722, 728 (2016), quoting from Bouchie v. Murray, 376 Mass. 524, 528 (1978). We review the judge's determination that the notation in question was admissible for abuse of discretion. See Commonwealth v. Rosa, 468 Mass. 231, 237 (2014) ; L.L., 470 Mass. at 185 n.27.
The defendant maintains that the questioned notation lacked "the characteristics justifying the presumption of reliability" that justifies the records' admissibility. We disagree. The notation was made on a form filled out by Dr. Cohen titled "[e]mergency [p]hysician [r]ecord," and can be found in a section titled "[c]linical [i]mpression." We are unpersuaded by any argument that this notation was not directly related to the treatment of the victim, and conclude therefore that the judge's admission of the notation was well within the reasonable range of alternatives. See ibid. See also Commonwealth v. Dyer, 77 Mass. App. Ct. 850, 854 (2010).
3. Joinder. The prosecution successfully moved for the defendant's witness intimidation indictment-which arose approximately two months before the start of trial-to be joined with the battery indictments as related offenses. Joinder of related offenses is permitted under Mass.R.Crim.P. 9(a)(1), 378 Mass. 859 (1979),[8] and "[t]he decision whether to join offenses for trial is a matter left to the sound discretion of the judge, ... and will not be reversed unless there has been 'a clear abuse of discretion.' " Commonwealth v. Pillai, 445 Mass. 175, 179-180 (2005), quoting from Commonwealth v. Walker, 442 Mass. 185, 199 (2004). The burden is on the defendant to show prejudice "from a failure to sever." Commonwealth v. Zemtsov, 443 Mass. 36, 43 (2004). "Factors a judge may consider in determining whether offenses are related include factual similarities ... and closeness of time and space." Pillai, supra at 180.
The defendant's indictment for witness intimidation stems from his contact with the victim outside the courthouse on the morning of a previously scheduled trial date for his attacks on the victim. At that time he told the victim to leave and pleaded with her not to testify against him. While the witness intimidation indictment came about two years after the original charges, it was fundamentally connected to the assaults and related directly to the victim's impending testimony at that trial. As such, we discern no abuse of discretion in the judge's decision to join the witness intimidation indictment.[9] See, e.g., Commonwealth v. Pagels, 69 Mass. App. Ct. 607, 617 (2007) (witness intimidation charges stemming from phone calls made to victim nearly two months after assault were joined because "the two offenses are related because they represent a series of events involving the same two individuals and stemming from the[same] incident").
4. Late disclosure. The defendant claims he was prejudiced by the Commonwealth's delayed disclosure of the following: (1) a photocopy of an envelope containing a letter sent by the defendant to the victim; (2) Nurse Ouellette, who had not been mentioned at the pretrial conference and was not on the witness list, as a witness; and (3) alleged promises made by a victim witness advocate to the victim contingent on her testimony.[10]
As a general rule, during the discovery process, the Commonwealth is required to provide the defense with the names of its prospective witnesses and "[m]aterial and relevant police reports, photographs, tangible objects, [and] all intended exhibits," among other things. Mass.R.Crim.P. 14(a)(1)(A)(vii), as amended, 442 Mass. 1518 (2004). In the event of a delayed disclosure, the burden is on the defendant to show that he was prejudiced by the delay itself, "not the likely impact of the nondisclosed evidence." Commonwealth v. Almeida, 452 Mass. 601, 609 (2008), quoting from Commonwealth v. Stote, 433 Mass. 19, 23 (2000). See Commonwealth v. Brien, 67 Mass. App. Ct. 309, 310 (2006). "[Delay] alone does not constitute prejudice." Stote, supra.
The defendant has failed to establish that he was prejudiced by any late disclosure, simply arguing that his defense was "materially hurt in its preparation by having to meet [the] unexpected [evidence]" which "may have contributed to the verdict." Commonwealth v. Eneh, 76 Mass. App. Ct. 672, 678 (2010), quoting from Commonwealth v. Gilbert, 377 Mass. 887, 895 (1979). He makes no persuasive argument as to "how receiving this information earlier would have affected his preparation of the case and did not move for a continuance, thus undermining his assertion that counsel was unable to prepare properly." Commonwealth v. Molina, 454 Mass. 232, 237 (2009).
The envelope had contained a letter allegedly written by the defendant to the victim.[11] The letter was already known to both parties. The defense challenged the envelope's authenticity; however, it provided a return address, which corroborated that the letter was written by the defendant. In response, the judge offered the defendant a continuance and funds to seek a handwriting expert. The defense declined, instead telling the judge that the only remedy sought as it related to the envelope was exclusion, and once the judge admitted the envelope, the defendant entered a joint stipulation regarding its authenticity. See Commonwealth v. Sanchez, 405 Mass. 369, 377 (1989) (defendant is bound by stipulation "unless [a judge] vacates it as improvident or not conducive to justice"). As the defendant declined the judge's offers to alleviate any prejudice that could have stemmed from the late disclosure, and bearing in mind that the authenticity of the envelope was not a determinative issue in this case, we conclude there was no prejudice stemming from the late disclosure. See Stote, supra; Molina, supra.
Similarly, the defendant argues that he was prejudiced by the Commonwealth's failure to disclose Oullette as a witness until the day that he testified. We note that "[a] judge has 'significant discretion in deciding whether ... late-disclosed witnesses should be excluded from testifying' as a remedy for late disclosure. ... The relevant inquiry is whether the defendant has sufficient time to investigate the proposed testimony." Commonwealth v. Carter, 475 Mass. 512, 519 (2016), quoting from Commonwealth v. Nolin, 448 Mass. 207, 225 (2007). At trial, the defendant asserted that Oullette's notes on the medical records were illegible, and therefore the defense was unable to properly prepare for his testimony. In response, the judge granted the defense time to interview Oullette prior to his testimony, and limited his testimony to only those portions of the record that he specifically wrote. We agree with the judge that the defense "should have been noticed" that Oullette was a potential witness. That notwithstanding, we conclude that the judge took measures to alleviate the possible prejudice that stemmed from the late notice, and that there was no abuse of discretion. See Carter, supra.
Judgments affirmed.

He was acquitted of assault with intent to murder, intimidation of a witness, and two additional counts of assault and battery by means of a deadly weapon upon a pregnant person.

When the victim first mentioned that she thought she may be pregnant, the defendant said that he did not want her to have a child of his because of her previous relationship with his late brother and the impact that would have on his family.

The day in question, March 6, 2013, was one of many days the trial was scheduled to begin before being continued.

Dr. Cohen was available on the original trial date, but the case was delayed because there was no available session. After an additional week delay, he informed the Commonwealth that he would no longer be available if the trial did not happen that week. Before ultimately allowing Oullette to testify despite his not being listed as a potential witness, the judge noted that in her experience, doctors "can be incredibly difficult to schedule."

The defendant was convicted of the ABDW, shod foot charge and acquitted of the other two ABDW charges.

Beneath "clinical impression" in the victim's medical records, Dr. Cohen circled "contusion" and noted next to it "abd" to indicate abdomen.

Rule 9(a )(1) provides: "Two or more offenses are related offenses if they are based on the same criminal conduct or episode or arise out of a course of criminal conduct or series of criminal episodes connected together or constituting parts of a single scheme or plan."

While we need not reach the issue of prejudice, we note that the defendant did not meet his burden of showing that he was prejudiced by the joinder. Notably, he was acquitted of the witness intimidation charge, and this conversation would have been admissible as consciousness of guilt evidence regardless. See Pagels, supra at 617. As such, the defendant would be unable to establish "that the prejudice from joinder was 'so compelling that it prevented him from obtaining a fair trial.' " Commonwealth v. Vital, 83 Mass. App. Ct. 669, 675 (2013), quoting from Walker, supra at 200.

The defendant claims that the victim had an immigration case pending at the time of the defendant's trial and was advised by her attorney that copies of the police reports relating to her assault would benefit her in that matter. The defendant alleges that the victim sought those records and was informed by a victim witness advocate that she could only receive them if she testified against the defendant. As there is insufficient evidence on this record to suggest any such agreement existed in the first place, the argument lacks merit and need not be discussed further. See Commonwealth v. Domanski, 332 Mass. 66, 78 (1954).

The letter, translated from Spanish, was essentially a string of apologies to the victim.