A District Court jury convicted the defendant of operating a motor vehicle while under the influence of alcohol (OUI), and of operating a motor vehicle negligently so as to endanger (negligent operation).[2] The defendant filed a motion for new trial, which the trial judge denied after an evidentiary hearing. In this consolidated appeal, the defendant argues that she is entitled to a new trial on the OUI conviction because of the ineffectiveness of her trial counsel, in combination with a misstep in the prosecutor's closing argument. She also argues that the evidence supporting the negligent operation conviction was insufficient as a matter of law. We affirm.
Alleged ineffectiveness of counsel. To make out a claim of ineffective assistance, a defendant must demonstrate (1) that her counsel's conduct fell "measurably below that which might be expected from an ordinary fallible lawyer," and (2) that it "likely deprived [her] of an otherwise available, substantial ground of defence." Commonwealth v. Saferian, 366 Mass. 89, 96 (1974). We review the denial of a motion for new trial for an abuse of discretion or other error of law. Commonwealth v. Murphy, 442 Mass. 485, 499 (2004). Where, as here, the judge hearing the motion for new trial also presided at the trial, his ruling is entitled to "special deference." Commonwealth v. Figueroa, 422 Mass. 72, 77 (1996). The defendant argues that her trial counsel was ineffective in three respects, which we address in turn. For the reasons that follow, we agree with the judge that trial counsel's alleged shortcomings do not warrant a new trial, whether viewed on their own or together with other alleged errors.
At the conclusion of the arresting officer's direct testimony, the prosecutor asked him whether he was "able to form an opinion as to [the defendant's] sobriety only that evening." The defendant objected, but the judge properly overruled that objection. See Commonwealth v. Canty, 466 Mass. 535, 544 (2013) ("a lay witness in a case charging operation of a motor vehicle while under the influence of alcohol may offer his opinion regarding a defendant's level of sobriety or intoxication"). However, in responding to the question, the officer strayed beyond permissible grounds by answering that he believed that the defendant was not only "intoxicated," but also "impaired, and should not be driving." See id. (lay witness in OUI case "may not opine whether a defendant operated a motor vehicle while under the influence of alcohol or whether the defendant's consumption of alcohol diminished his ability to operate a motor vehicle safely"). Defense counsel did not object to or move to strike that portion of the officer's answer, and the defendant now claims that this failure constituted constitutional ineffectiveness.
Passing over the question whether counsel's failure to object fell "measurably below that which might be expected from an ordinary fallible lawyer," we agree with the Commonwealth that the defendant cannot satisfy the second Saferian prong. Saferian, 366 Mass. at 96. The evidence that the defendant was intoxicated and impaired was strong.[3] Faced with such evidence, we find it difficult to imagine that the jury were swayed by hearing that the officer who arrested the defendant for OUI in fact believed she was "impaired, and should not be driving." This is especially true where the judge properly instructed the jury:
"[I]t is for you as the jury to determine whether the defendant was under the influence of alcohol according to the definition that I have provided ... [and y]ou may consider any opinion that you've heard and accept it or reject it, but in the end you and you alone must decide whether the defendant was under the influence of intoxicating liquor."
The defendant also claims ineffectiveness in her counsel's failure to object to testimony that the defendant had admitted to the arresting officer "that she takes a whole bunch of medication for back pain, back spasms, and inflammation," and that she had "take[n] her medication [that day]." Although there was no evidence of what specific medication the defendant had taken, or when that day she had taken it, the defendant now claims that the admission of such testimony seriously prejudiced her, by inviting the jury to speculate on how the medication might have exacerbated the effects of the alcohol in regard to her ability to operate a motor vehicle safely.
The record reflects that defense counsel made a considered, strategic decision to allow the jury to hear evidence that the defendant took medication for her physical ailments. Defense counsel believed the evidence would highlight the seriousness of her medical conditions for the jury and, in turn, provide a potential explanation for why the defendant performed so poorly on the field sobriety tests. "Where, as here, the defendant's ineffective assistance of counsel claim is based on a tactical or strategic decision, the test is whether the decision was ' "manifestly unreasonable" when made.' " Commonwealth v. Kolenovic, 471 Mass. 664, 674 (2015), quoting Commonwealth v. Acevedo, 446 Mass. 435, 442 (2006). Defense counsel's decision to let such evidence stand was well within the bounds of reasonableness.
The defendant also argues that her counsel was ineffective by allowing in evidence the results of the breathalyzer tests that the defendant took after being brought back to the police station.[4] Those results were .069 and .07 percent blood alcohol content by weight, figures that lie below the .08 legal limit for a per se violation. The record reflects that, again, defense counsel made a considered strategic choice to allow the jury to hear such evidence (a decision that defense counsel made only after extensive discussions with the defendant). Then, in an effort to use such evidence to the benefit of the defendant, defense counsel solicited testimony that "both of those [results] are below the legal limit of .08." We agree with the judge's assessment that defense counsel's decision to allow the jury to learn the breathalyzer test results "was a legitimate tactical decision and not the result of incompetence, inefficiency, or inattention of counsel."
The defendant also makes a different argument regarding the admission of the breathalyzer test results. As the defendant points out, State regulations constrain the use of breathalyzer testing. According to the defendant, the applicable regulations require that sample results be recorded in the two decimal mode and "when truncation results in non-identical readings, only the lower figure is admissible." See Commonwealth v. Hourican, 85 Mass. App. Ct. 408, 411-412 (2014). Had these requirements been followed, the defendant argues, the jury would have heard that the defendant had a blood alcohol of only .06, not .069 and .07. Because allowing the jury to hear the higher figures would serve no strategic purpose, the defendant maintains that her counsel was ineffective in failing to keep those figures out.
The flaw in this argument is that the defendant has not demonstrated how defense counsel could have insisted that only the .06 figure be used. Because the Commonwealth was proceeding only on an impairment theory, the introduction of any test results as to blood alcohol level would not have been sanctioned without their being accompanied by expert opinion explaining their significance. See Commonwealth v. Colturi, 448 Mass. 809, 817-818 (2007). Had the defendant objected to the testimony about the results, this presumably would have resulted in the exclusion of the testimony altogether, not in tailoring the results as the defendant preferred. See id. Therefore, the decision not to object to the blood alcohol results was not manifestly unreasonable. See Kolenovic, 471 Mass. at 674. In any event, that decision did not deprive the defendant of a "substantial ground of defence" in light of how strong the evidence of the defendant's intoxication and impairment was. Saferian, 366 Mass. at 96. See note 2, supra.
Closing argument. During her closing argument, defense counsel emphasized evidence that the defendant was driving safely, pointing out, for example, that the defendant was not seen to strike the guardrail or another car. In response, the prosecutor stated the following in closing:
"Congratulations, she didn't crash her car. The whole point of officers being out patrolling the streets is to be sure things like that don't happen. We don't want people to crash. I don't want her to crash and hurt herself or anyone else."
At this point, the defendant lodged an objection that the judge overruled, but he agreed to "hear [defense counsel] after the argument." Before switching topics, the prosecutor continued making similar remarks to the jury: "And I'm sure that the police don't want that to happen either. That's why they investigate and make sure that that doesn't happen." After the prosecutor finished her closing argument, defense counsel explained at sidebar that her objection was based on the prosecutor's "espousing her personal opinion." The judge responded that "in the context of the entire argument, [he found] the [prosecutor's] comment[s] harmless ... [b]ut [that he would] instruct the jury that they are to disregard any personal opinions of the attorneys in the closing argument, and remind them that closing arguments are not evidence." True to his word, the judge then forcefully instructed the jury to that effect.
On appeal, the defendant now argues that the prosecutor's remarks were erroneous on a different ground, namely that they constituted an improper appeal to the jury's passions and sympathies. See Commonwealth v. Vazquez, 65 Mass. App. Ct. 305, 312 (2005). An objection on one ground does not preserve a claim of error based on a different ground, and our review is therefore confined to whether any error caused a substantial risk of a miscarriage of justice. See Commonwealth v. Rivera, 425 Mass. 633, 636-637 (1997). Juries are presumed to exhibit a certain degree of sophistication, and we view the language that the prosecutor used as, at most, excusable "enthusiastic rhetoric" (citation omitted). Commonwealth v. Silva, 455 Mass. 503, 515 (2009). See Commonwealth v. Kozec, 399 Mass. 514, 516-517 (1987). We discern no error, much less a substantial risk of a miscarriage of justice.
Negligent operation conviction. The arresting officer's attention was first drawn to the defendant's car when he observed it take a wide turn at an intersection and almost hit a pedestrian (who was "about seventy-five percent of the way through the crosswalk") at whom the defendant then hurled an expletive. Trailing the defendant's car from behind, the officer then observed the defendant change lanes without signaling and drive approximately five miles per hour above the posted speed limit. He then pulled the defendant over after he saw the car make another turn, this time drifting to the right "as if it was going to go onto the sidewalk." The defendant avoided this only by making a "last second" correction. Having "seen enough," the officer pulled over the defendant's car.
To sustain a negligent operation conviction, the Commonwealth must prove that a defendant operated a motor vehicle on a public way "negligently so that the lives or safety of the public might be endangered." Commonwealth v. Duffy, 62 Mass. App. Ct. 921, 921 (2004). Relying principally on dicta in Commonwealth v. Twombly, 435 Mass. 440, 444 (2001), the defendant argues that any driving infractions here were so minor that the Commonwealth's proof that she had placed the public at risk was insufficient as a matter of law.[5] We disagree. In considering the sufficiency of the evidence, we must, of course, read it in the light most favorable to the Commonwealth. See Commonwealth v. Latimore, 378 Mass. 671, 676-678 (1979). Putting aside whatever risks the defendant's initial driving may have caused, the testimony that she almost drove onto the sidewalk provided sufficient evidence of endangerment to sustain a negligent operation conviction. See Duffy, supra at 923 (observing that governing "statute only requires proof that the lives or safety of the public might be endangered, not that they are endangered").
Judgments affirmed.
Order denying motion for new trial affirmed.

The defendant faced multiple other charges arising out of the same incident, but these charges were dismissed at the request of the Commonwealth prior to trial.

After making a left turn, the defendant's vehicle drifted to the right "as if it was going onto the sidewalk"; her speech was slurred and her eyes glassy, "red[,] and wet"; she was unsteady on her feet; she admitted to having had a few beers and there was an open twenty-four-ounce can of malt liquor at her feet; she was unable successfully to complete oral and physical field sobriety tests; and her manner with the officers alternated between belligerence and overfamiliarity, with her even going so far that -- when an officer attempted to catch her as she nearly fell during her third try performing a field sobriety test -- she "broke into a dance, started dancing, trying to dance with" the officer.

In a pretrial discussion with the judge, defense counsel agreed that she would stipulate to those results. At trial, a police witness offered the specific results in response to a question from the prosecutor whether he was aware of the results. Defense counsel did not object.

In this regard, the defendant (who proceeded after the light had turned green) appears to suggest that her encounter with the pedestrian in the crosswalk was a result of the pedestrian's jaywalking, not her negligent driving.