## COMMONWEALTH *vs.* JOHN STOTE.

Hampden. October 3, 2000. - December 8, 2000.

Present: MARSHALL, C.J., IRELAND, SPINA, COWIN, & SOSMAN, JJ.

*Practice, Criminal,* New trial, Argument by prosecutor, Failure to object, Disclosure of evidence, Capital case. *Evidence,* Scientific test, Consciousness of guilt, Relevancy and materiality, Hearsay.

A defendant convicted of murder in the first degree did not demonstrate that any material prejudice resulted from the prosecution's inadvertently late disclosure of a chemist's report, or how timely disclosure would have aided the preparation and presentation of his defense, such as would warrant the grant of a new trial. [22-25]

At a murder trial, the judge did not err in excluding certain evidence proffered to demonstrate the victim's alleged involvement in organized crime, asserted to explain the defendant's actions characterized by the prosecutor as consciousness of guilt (lying to police, cleaning the crime scene, disposing of the body), where the evidence lacked foundation, was hearsay, or was irrelevant. [25-27]

No substantial likelihood of a miscarriage of justice arose from comment made by the prosecutor in closing argument to the jury, which was a fair rhetorical response to defense counsel's arguments; a further arguably improper comment did not create a substantial likelihood of a miscarriage of justice, given the judge's instructions, the defendant's failure to object, the prosecutor's entire argument, and the weight of the Commonwealth's case. [27-29]

INDICTMENT found and returned in the Superior Court Department on November 22, 1995.

The case was tried before *Daniel A. Ford,* J., and a motion for a new trial, filed on March 5, 1999, was heard by him.

*William T. Walsh, Jr.,* for the defendant.

*Dianne M. Dillon,* Assistant District Attorney, for the Commonwealth.

IRELAND, J. The defendant, John Stote, was convicted of murder in the first degree. He appealed from the conviction to this court. During the pendency of this appeal, the defendant was granted leave by a single justice to file a motion for a new

trial, which the defendant did, alleging the existence of newly discovered evidence sufficient to warrant a new trial. The trial judge denied this motion, and the defendant appealed. Both appeals are consolidated before this court. The defendant claims the trial judge erred in (1) denying a motion for a new trial where the Commonwealth failed timely to disclose arguably exculpatory evidence; and (2) limiting evidence of the victim's alleged membership in organized crime, proffered by the defendant to explain actions characterized by the prosecutor as "consciousness of guilt." Finally, the defendant requests that we exercise our plenary power under G. L. c. 278, § 33E, to reduce the degree of guilt. For the reasons set forth below, we affirm the conviction and decline to exercise our power under G. L. c. 278, § 33E.

1. *Statement of facts.*

The jury were warranted in finding the following facts. In July, 1994, the defendant purchased a bar in Springfield from the victim, John Regan, and his brother, James. The defendant made a down payment of $80,000 and agreed to make monthly payments of approximately $2,500. The defendant soon fell behind in his payments, prompting the victim and James to initiate foreclosure proceedings. The resulting auction took place on September 27, 1995, where the victim and James repurchased the bar. After this repurchase, the victim and the defendant negotiated terms under which the defendant might reacquire the bar. The victim's wife testified that the victim and the defendant planned to meet at the bar on October 12, 1995, so that the defendant could repay what he owed the victim in arrears. On that day, the defendant dropped off his girl friend, Denise Arlen, to run errands, and then proceeded to the meeting. The defendant testified that at the meeting, after he informed the victim that he did not have the money to pay the victim, they engaged in an argument that escalated into violence. It ultimately resulted in the defendant stabbing the victim to death in the office of the bar. The defendant testified that he did so in self-defense, after the victim became belligerent and irate about the money, told the defendant, "I am going to teach you the last lesson of your life," and struck him on the shoulder with a baseball bat.

After the killing, the defendant grabbed the murder weapon and fled the scene to pick up Arlen. He confessed to her that he had killed the victim in self-defense. Arlen testified that the

defendant looked "shaken up" and "scared." The defendant and Arlen opted not to go to the police because the defendant feared the victim's alleged associations with organized crime, and they felt that no one would believe them. Instead, the defendant disposed of the murder weapon and both the defendant and Arlen parked the victim's car in a Hartford, Connecticut, garage. The defendant then borrowed a station wagon from his sister's friend and used it to dispose of the victim's body in the Connecticut River. Meanwhile, Arlen returned to the bar and began to clean the blood from the incident. On his return, the defendant joined Arlen, and together they cleaned the entire bar, including the office, using bleach and other chemicals. The following morning, they returned to the bar to finish cleaning. While they were cleaning, the victim's son came to the bar and knocked on the windows of the bar. The son testified that when he asked the defendant if the defendant had seen the victim, the defendant replied that he had not seen the victim since the previous afternoon.

After Arlen and the defendant finished cleaning, they left for a wedding in Cape Cod. En route, they dumped the bloody towels, which they had used to clean the bar, at a fast food restaurant near Route 495. On October 14, 1995, the defendant called the victim's home. He spoke with both the victim's wife and daughter, and told them that he had heard the victim was missing, but did not know where the victim was. He also told them that he had paid the victim $20,000. Within an hour, he called for a second time and stated that he had paid the $20,000 in cash.

On that same day, after the defendant returned to Springfield, a police officer questioned him about the victim's whereabouts. The defendant gave the police a statement indicating that he had met with the victim on October 12, 1995, paid his debt of $20,000 in exchange for the liquor license and keys to the bar, and parted with the victim on good terms. While giving this statement, he wore a tank top that exposed large portions of his upper torso. The officer who took his statement did not notice any signs of bruising or other injuries to the defendant's torso.

On May 26, 1996, nearly seven months after the victim had last been seen, his body was discovered in the Connecticut River. The forensic pathologist testified that the victim had sustained ten stab wounds, had two defense wounds on his hand and elbow, and that the cause of death was multiple stab wounds.

Further facts will be presented with respect to each issue.

2. *Delayed disclosure of the chemical report.*

The defendant argues that he was prejudiced by the prosecution's delayed pretrial disclosure of potentially exculpatory evidence. Prior to trial, the Commonwealth was ordered to disclose and identify forensic evidence and to make available all scientific reports. However, the Commonwealth failed to disclose a report generated by a State police chemist, Gwen Pino, in a timely fashion. Defense counsel did not receive that report, dated July 10, 1996, until June 11, 1997, nearly one year after it was generated and five days before trial. The defendant claims that the delayed disclosure deprived him of the opportunity to present testimony from an expert, Norman Reeves. The defendant insists that Reeves would have corroborated the defendant's self-defense claim by testifying that the quantity and state of the blood stains described in the chemical report were not inconsistent with the victim swinging a bat at the defendant.[1] He asserts that this error warrants a new trial.

In reviewing the denial of the defendant's motion for a new trial, we "examine the motion judge's conclusion only to determine whether there has been a significant error of law or other abuse of discretion." *Commonwealth* v. *Grace*, 397 Mass. 303, 307 (1986).

It is undisputed that, pursuant to the trial court's order, the prosecution was obligated to disclose all scientific test results, including the chemical report. *Commonwealth* v. *Martin*, 427 Mass. 816, 823 (1998). The Commonwealth offers no credible explanation for its failure to do so. Where the Commonwealth has delayed in disclosing evidence prior to trial, our principal concern is whether the defendant has been prejudiced by the delay. *Commonwealth* v. *Hardy*, 431 Mass. 387, 392 (2000). *Commonwealth* v. *Hamilton*, 426 Mass. 67, 70 (1997). When the ground for a motion for a new trial "involves late disclosure by the prosecution, without any showing of bad faith on its part . . . . a defendant is required to show material prejudice from the [delay in] disclosure before a new trial can be considered." *Commonwealth* v. *Hamilton, supra.* See *Commonwealth* v. *Hardy, supra.*

---

[1]Reeves did not testify at the trial. In support of his motion for a new trial, the defendant submitted Reeves's affidavit, dated April 26, 1999, and the defendant appears to assume that Reeves would have testified to the contents of this affidavit at trial had the chemical report been disclosed earlier.

The defendant has not made a showing of bad faith on the part of the prosecution. See *Commonwealth* v. *Hamilton, supra* at 71. The defendant does not rebut the Commonwealth's claim that the late disclosure was inadvertent. Absent a showing of bad faith, we consider the primary issue of prejudice. In measuring prejudice, "it is the consequences of the delay that matter, not the likely impact of the nondisclosed evidence, and we ask whether the prosecution's disclosure was sufficiently timely to allow the defendant 'to make effective use of the evidence in preparing and presenting his case.' " *Commonwealth* v. *Wilson,* 381 Mass. 90, 114 (1980), quoting *Commonwealth* v. *Adrey,* 376 Mass. 747, 755 (1978). See *Commonwealth* v. *Hardy, supra* at 392; *Commonwealth* v. *Vinnie,* 428 Mass. 161, 175, cert. denied, 525 U.S. 1007 (1998).

We agree that the delay in this case of almost one year was unfortunate, particularly because, from the outset, the defendant expressed concerns about that very possibility.[2] Nonetheless, this alone does not constitute prejudice. The defendant has not shown how his trial tactics would have or should have changed, had he been aware of the chemical report earlier. *Commonwealth* v. *Hardy, supra. Commonwealth* v. *Cundriff,* 382 Mass. 137, 151 (1980), cert. denied, 451 U.S. 937 (1981). This fact is particularly emphasized by the defendant's failure to utilize the chemical report after receiving it five days prior to the commencement of trial. Although the defendant argues that he would have hired Reeves to corroborate the defendant's self-defense claim, he took no steps to do so in those five days, although he did seek a continuance.[3]

In addition, notwithstanding the alleged value of the chemical

[2] The defendant filed motions for exculpatory evidence and for copies of tests and reports or physical evidence and scientific evidence, and at one point in a pretrial hearing stated, "We don't want to get ourselves in a position where we're setting a trial date and then a week before, couple days before [*sic*], 'Oh, by the way, this is [*sic*] the results of the tests that was [*sic*] done.' "

[3] We note that the defendant contends that under *Commonwealth* v. *Emerson,* 430 Mass. 378, 382 (1999), cert. denied, 120 S. Ct. 1446 (2000), it is significant that he requested a continuance, which was denied. It is true that, in *Emerson,* we encouraged defense counsel, "when faced with delayed disclosure situations, [to] seek 'additional time for investigative purposes.' " *Id.,* quoting *Commonwealth* v. *Baldwin,* 385 Mass. 165, 175 (1982). However, this request alone did not create prejudice. It was within the trial judge's discretion to grant a continuance. *Commonwealth* v. *Miles,* 420 Mass. 67, 85 (1995) ("[t]he decision whether to grant a motion to continue is within the

report to corroborate the defendant's theory of self-defense, the record reveals that, in March, 1996, over one year prior to the trial, the Commonwealth furnished the defendant with discovery materials containing evidence similar to that found in the chemical report.[4] While those materials may have been less expansive than the chemical report, they refer to both the quantity and state of the blood found in the bar's office. Despite having access to this information, the defendant did not utilize it in a manner consistent with the way he claims he would have used the chemical report. Since he failed to use similar evidence during the trial, he can "offer[] no explanation of how [his] trial tactics would or should have changed had the defendant been aware of this evidence earlier." *Commonwealth* v. *Hardy, supra* at 392. *Commonwealth* v. *Cundriff, supra* at 151 (defendant must demonstrate prejudice by late disclosure and how new trial would substantially remedy that prejudice).

Additionally, defense counsel was permitted to cross-examine Pino extensively with respect to her investigation, the missing report, and the quantity and state of the blood spatters. *Commonwealth* v. *Hardy, supra* at 392-393. *Commonwealth* v. *Costello,* 392 Mass. 393, 398 (1984) (defendant's opportunity to cross-examine extensively regarding previously undisclosed testimony effectively removed any prejudice).

The defendant also claims, based on the chemical report, that Reeves would have testified at trial that Pino improperly preserved the crime scene. At oral argument, defense counsel asserted that this impropriety would have explained Reeves's inability to further expand his corroboration of the defendant's self-defense claim. This argument ignores the fact that it was the defendant and Arlen who obliterated a great deal of the crime scene's visible evidence by cleaning it on October 13, 1995, before the police investigated the scene.

---

sound discretion of the trial judge"). Cf. *Commonwealth* v. *Trapp,* 423 Mass. 356, 363-364 (1996) (with respect to late-disclosed witnesses, the "trial judge has significant discretion" to grant a continuance). For the same reasons the defendant failed to show that he was prejudiced by delayed disclosure, he has failed to show that the judge abused his discretion in denying the request for a continuance. *Commonwealth* v. *Miles, supra; Commonwealth* v. *Mamay,* 407 Mass. 412, 419 (1990).

[4] The Commonwealth claims it provided the defendant with the following evidence: minutes of the grand jury testimony from both Lieutenant Thomas Kelly and Detective Raymond Muise, a report from Detective Muise, and Lieutenant Kelly's affidavit in support of a warrant to search the bar. The defendant has not denied that he was provided with such information.

Thus, even if the chemical report's disclosure had been timely, the defendant has not shown how it would have aided him "in preparing and presenting his case." *Commonwealth* v. *Wilson,* 381 Mass. 90, 114 (1980). Further, we note that, even if the defendant had shown prejudice from the delay, the chemical report would not necessarily have aided his defense. Indeed, while Reeves could testify that the blood stains observed and reported in the chemical report were "compatible with blood leaving the victim's arms consistent with the arms swinging with force . . . not unlike the actions being described by [the defendant] of the victim swinging a bat while bleeding," defense counsel conceded that Reeves "certainly would not have been able to say that the movement was movement that was attributed to somebody holding a bat in his hands and swinging it, and neither would [defense counsel] have credited such testimony." Given the victim's defensive wounds, the victim's movement would be as consistent with attempting to defend himself from the defendant's attack upon him as with the victim's swinging a baseball bat at the defendant. The trial judge did not err in denying the defendant's motion for new trial.

3. *Trial judge's limit on Alben's testimony.*

We also reject the defendant's argument that both the judge and the prosecutor "mishandled" evidence of the victim's alleged involvement in organized crime. Such evidence was "proffered by the defense to explain actions which were characterized by the prosecutor as consciousness of guilt." At trial, the prosecution introduced evidence that the defendant lied to both the police and the victim's family, cleaned the scene of the killing, and disposed of the victim's body in the Connecticut River as consciousness of guilt. He argues that a key element of his defense was to offer an innocent explanation for this conduct, namely, that "he was more afraid of organized crime than the police." To this end, the defendant sought to offer testimony from an alleged organized crime expert, Massachusetts State police Sergeant Timothy Alben,[5] that, on the basis of several fac-

---

[5]In his brief, the defendant claims that Alben "was in effect [*sic*] offered as an expert on the subject of organized crime, a premise never challenged by the prosecutor or the trial court." However, from the transcript, it does not appear that Alben was offered as such by the defendant.

tors,[6] he felt the victim was a "bookmaker" and a member of organized crime. The judge ruled that evidence of the victim's 1987 arrest was too remote in time to be probative and that Alben's testimony regarding a raid on the victim's home in 1992, which did not result in charges, lacked foundation. The judge also excluded evidence of the victim's alleged bookmaking activities. The defendant contends that the judge improperly limited Alben's trial testimony to his personal observations of the victim's associating with people whom Alben "knew from experience to be reputed mob figures" in 1992. The defendant claims that the limitation was "inadequate" and prejudiced his ability to counter evidence of consciousness of guilt. We disagree.

"Whether evidence is relevant in any particular instance, and whether the probative value of relevant evidence is outweighed by its prejudicial effect, are questions within the sound discretion of the trial judge. . . . [T]he judge's determination of these questions will be upheld on appeal absent palpable error." *Commonwealth* v. *Peixoto*, 430 Mass. 654, 661 (2000), quoting *Commonwealth* v. *Valentin*, 420 Mass. 263, 270 (1995).

We conclude that the judge did not err in excluding the evidence of the 1992 raid, which did not result in any charges, for lack of foundation. Moreover, the judge properly excluded testimony that the victim conducted illegal "bookmaking" activities, as such testimony would be based on hearsay. In addition, the defendant did not establish that the materials found on the body of the victim were actually "bookmaking" materials. In fact, at voir dire, Alben simply stated that the materials "could be" "bookmaking" materials. Alben also did not know the significance of certain markings on the materials. Moreover, even if the items were "bookmaking" materials, other than noting that they were found on the body of the victim, the defendant has not shown that they belonged to the victim. Furthermore, Alben testified that illegal "bookmaking" and organized crime are not necessarily related. Thus, the defendant

[6]At voir dire, Alben testified that (1) the victim was arrested in 1987; (2) a 1992 raid on the victim's home, which did not result in charges, revealed records indicative of the victim's involvement in "bookmaking" or recording of gambling; (3) although the victim was never a focus of surveillance, he did come within surveillance of other investigations of organized crime suspects; (4) he had seen the victim in the company of organized crime members; (5) the victim had close associations with organized crime; and (6) he had concluded that the victim was a "bookmaker."

established neither the relevance of the materials, nor a foundation to argue that the materials were indicative of the victim's involvement in organized crime. For these reasons, the judge properly limited Alben's testimony to his observations of the victim in the company of known organized crime figures.

With respect to the evidence of the victim's prior 1987 arrest, we have held that "[w]hether evidence is legally relevant is a question which is generally left to the discretion of a trial judge . . . . The proximity to the crime in point of time is an element which the judge in his discretion may consider in viewing the probative value of evidence." *Commonwealth* v. *Palmariello*, 392 Mass. 126, 137 (1984), quoting *Commonwealth* v. *Chasson*, 383 Mass. 183, 187 (1981). The judge did not abuse his discretion in excluding evidence of an arrest that took place eight years before the killing. *Commonwealth* v. *Palmariello, supra* at 137 (hostilities between the defendant and the victim two years prior to the crime too remote in time). For these reasons, the limitation on Alben's testimony was proper.[7]

The defendant also argues that the prosecutor mishandled the Alben testimony.[8] This argument is without merit.

Finally, the defendant faults two references in the prosecutor's closing argument, the first of which relates to the victim's lack of involvement in organized crime. The second involves the defendant's self-defense claim. The defendant failed to object to

---

[7]We note that, even if the judge had erred in limiting Alben's testimony, it would not have constituted a prejudicial error. *Commonwealth* v. *Daggett*, 416 Mass. 347, 352 n.5 (1993). First, contrary to the defendant's assertion, Alben never testified at the voir dire that the victim was a *member* of organized crime. Indeed, it does not appear from the transcript of the voir dire that Alben was prepared to say more than that the victim had close associations with organized crime. Second, the defendant has made no showing that, at the time of the killing, he was aware of either the arrest or the raid. Thus, these factors could not have substantiated the defendant's theory that he feared the victim's organized crime connections. Finally, the defense was permitted to put on substantial testimony as to the defendant's fear of the victim's organized crime associations via Arlen and the defendant himself. As such, the limitations on Alben's testimony did not "weaken[] the [defendant's case] in some significant way." *Id.*, quoting *Commonwealth* v. *Schulze*, 389 Mass. 735, 741 (1983).

[8]The defendant claims that the prosecutor unfairly (1) challenged both the defendant's testimony and Alben's proffered testimony regarding the victim's organized crime associations, because, the defendant insists, the evidence is "true"; (2) filed a motion in limine seeking to exclude references to organized crime; and (3) sought to explain the victim's associations with organized crime as coincidence when she cross-examined Alben.

these comments at trial. We have held that "[f]ailure to object to the closing and to ask for a curative instruction waives the right to claim error on appeal, limiting our inquiry to whether the prosecutor's statements are such that they create a substantial likelihood of a miscarriage of justice." *Commonwealth* v. *Marquetty*, 416 Mass. 445, 450 (1993). See *Commonwealth* v. *Lyons*, 426 Mass. 466, 471 (1998); *Commonwealth* v. *Mello*, 420 Mass. 375, 380 (1995). "We analyze the remarks in 'light of the entire argument, as well as in light of the judge's instruction to the jury and the evidence at trial.'" *Commonwealth* v. *Mello, supra,* quoting *Commonwealth* v. *Marquetty, supra.* See *Commonwealth* v. *Duguay*, 430 Mass. 397, 403 (1999); *Commonwealth* v. *Kozec*, 399 Mass. 514, 516-517 (1987). In addition, "[w]e have never criticized a prosecutor for arguing forcefully for a conviction based on the evidence and on inferences that may reasonably be drawn from the evidence." *Commonwealth* v. *Kozec, supra* at 516. See *Commonwealth* v. *Chavis*, 415 Mass. 703, 713 (1993) ("the prosecutor may comment on evidence developed at trial and draw inferences from such evidence").

With respect to the first comment, the prosecutor suggested that, when dealing with the defendant's delinquency in making payments in the past, the victim always sought legal recourse via lawful channels. She then rhetorically asked, "Does that sound like something mob-connected?" We note that during his argument, defense counsel had insinuated that the victim and his "friends" posed a serious threat to the defendant. Accordingly, the prosecutor limited her argument to respond to this implication. "It is not error for the prosecutor to provide a fair, unemotional response to defense counsel's arguments." *Commonwealth* v. *Duguay, supra* at 404.

As to the second comment, the prosecutor argued that there was "ridiculous evidence of self-defense . . . it insults·your intelligence." The reference was an unnecessary characterization, and came very close to crossing the line of a permissible "comment on evidence developed at trial." *Commonwealth* v. *Kosilek*, 423 Mass. 449, 459 (1996). Nevertheless, given the judge's instructions,[9] the defendant's failure to object to the

---

[9]The judge gave clear instructions as to the nonevidentiary role of closing arguments, and what does and does not constitute evidence. He also properly instructed on the issue of self-defense, and stressed the Commonwealth's

comments at trial,[10] the prosecutor's entire argument, and the weight of the Commonwealth's case, the comment did not create a substantial likelihood of a miscarriage of justice. *Commonwealth* v. *Duguay, supra* at 404. *Commonwealth* v. *Lyons, supra* at 471. *Commonwealth* v. *Koselik, supra* at 459. *Commonwealth* v. *Marquetty, supra* at 450.

4. *Section 33E review.*

Pursuant to our duties under G. L. c. 278, § 33E, we have reviewed the entire record. We find nothing that compels us to exercise our discretion to disturb the jury's verdict, either by reducing the verdict or granting a new trial.

*Judgment affirmed.*

*Order denying motion for a new trial affirmed.*

---

burden of proving beyond a reasonable doubt that the defendant did not act in self defense. See *Commonwealth* v. *Evans,* 415 Mass. 422, 429 (1993).

[10]*Commonwealth* v. *Mello, supra* at 380, quoting *Commonwealth* v. *Toro,* 395 Mass. 354, 360 (1985) ("[t]he fact that the defendant did not object, '[a]lthough not dispositive of the issue . . . is some indication that the tone [and] manner . . . of the now challenged aspects of the prosecutor's argument were not unfairly prejudicial' ").