COMMONWEALTH *vs.* JUAN PAGAN
(and five companion cases[1]).

No. 07-P-667.

Hampden. May 20, 2008. - December 18, 2008.

Present: McHugh, Dreben, & Mills, JJ.

*Controlled Substances. Practice, Criminal,* Motion to suppress, Motion for reconsideration. *Rules of Criminal Procedure.*

The Commonwealth, in appealing from a trial judge's allowance of criminal defendants' motions to suppress evidence, had no basis on which to challenge the judge's findings regarding the credibility of witnesses [374]; further, the Commonwealth failed to demonstrate that the judge abused his discretion in denying the Commonwealth's motion for reconsideration, where, although the reconsideration standard that the judge articulated was too narrow, neither the wrong standard nor the judge's statement that he "assumed" the truth of certain evidence compelled the judge to provide a new hearing or to reverse his suppression order [374-376].

INDICTMENTS found and returned in the Superior Court Department on September 7, 2005.

Motions to suppress evidence were heard by *Cornelius J. Moriarty, II,* J., and a motion for reconsideration also was heard by him.

An application for leave to prosecute an interlocutory appeal was allowed in the Supreme Judicial Court for the county of Suffolk by *John M. Greaney,* J., and the appeal was reported by him to the Appeals Court.

*Marcia B. Julian,* Assistant District Attorney, for the Commonwealth.

*Michael J. Fellows* for Juan Pagan.

*Edward S. West* for Luis Lopez.

---

[1]Two of the companion cases are against Pagan, and three are against Luis Lopez.

McHUGH, J. The defendants, Juan Pagan and Luis Lopez, were each indicted on charges of trafficking in cocaine, G. L. c. 94C, § 32E(*b*), within a school or park zone, G. L. c. 94C, § 32J, and conspiring to violate the controlled substance laws, G. L. c. 94C, § 40. Each defendant filed a motion to suppress approximately five ounces of "crack" cocaine police found during a warrantless search of their vehicle, arguing that the police lacked probable cause to conduct that search. After an evidentiary hearing, a judge allowed the motions.

The Commonwealth filed a motion to reconsider, which was denied. A single justice of the Supreme Judicial Court allowed the Commonwealth's application for leave to appeal, see Mass. R.Crim.P. 15(a)(2), as appearing in 422 Mass. 1501 (1996), and 15(b)(1), as appearing in 422 Mass. 1502 (1996), and the case was entered here. On appeal, the Commonwealth claims that the judge applied the incorrect standard when ruling on the motion to reconsider and, in any event, factual "findings" he made after a hearing on that motion required denial of the defendants' motions to suppress. For the reasons outlined below, we affirm.

1. *Background.* The Commonwealth's principal witness at the suppression hearing was Officer Paul Barkyoumb of the Holyoke police department's narcotics unit. Officer Barkyoumb testified that the investigation leading to the defendant's arrest was triggered by information he received from a confidential informant. The informant, who, according to Officer Barkyoumb, had provided information resulting in several convictions for narcotics offenses, plus discovery of drugs and paraphernalia, told Officer Barkyoumb that an individual named "Shago" sold crack cocaine in the Springfield and Holyoke area, and offered to make telephone arrangements to buy some cocaine from him. Barkyoumb accepted the informant's offer.

On July 18, 2005, following up on the offer, Officer Barkyoumb met with the informant in an unmarked police car near a Holyoke apartment complex and instructed him to call Shago to arrange the sale. The informant complied by telephoning Shago and ordering five ounces of crack cocaine. According to Barkyoumb, Shago agreed to deliver the cocaine and told the infor-

mant to meet him in a nearby Holiday Inn parking lot where he would arrive an hour later driving a gray Acura Integra automobile. The informant agreed.

In direct and cross-examination, Officer Barkyoumb testified that, at his instruction, the informant told Shago in the same telephone conversation that he would be driving a white Mitsubishi Eclipse automobile to the meeting place. Later, when pressed by the motion judge, Officer Barkyoumb testified that the informant gave Shago information about the Eclipse in a later telephone call. In any event, the Eclipse information, according to Officer Barkyoumb, was a ruse, for the informant owned no such vehicle. Instead, Officer Barkyoumb testified, he had seen a white Eclipse in the Holiday Inn parking lot and had randomly selected it as a meeting point because it was parked in an area that allowed for good surveillance and other officers on his team were then watching it. He also testified that he knew the owner of the randomly selected Eclipse, who turned out to be a relative of a Holyoke reserve police officer.

At the appointed hour, Shago, later identified as Pagan, drove a gray Acura automobile into the Holiday Inn lot. Lopez was with him in the front seat. Pagan parked next to the Eclipse, got out of the car, and opened the Acura's trunk. As he did, police officers moved in with guns drawn, surrounded him, and ordered Lopez out of the vehicle. In all, twenty-two officers from Holyoke, Agawam, the Hampden County narcotics task force, and the Hampden County gang task force participated in the arrest. These officers, according to Officer Barkyoumb, had been assembled in the fifty minutes between the time of the informant's initial conversation with Shago and Shago's arrival at the Holiday Inn.

Upon seeing the officers, Pagan dropped a cellular telephone and some money into the Acura's trunk. A later search of the vehicle produced a shopping bag on the floor behind the front passenger seat containing four or five smaller individual bags of crack cocaine. Following their discovery of the cocaine, the officers arrested Lopez and Pagan, who were subsequently indicted for trafficking in cocaine, see G. L. c. 94C, § 32E(*b*), and related offenses.

When asked at the hearing about the informant, Holyoke police Officer Barkyoumb said that he wanted to keep the identity confidential, although he acknowledged that the manner in which the sale was arranged necessarily meant that the defendants would know who the informant was. Officer Barkyoumb also testified, however, that the informant had told him that he did not care if Shago was able to identify him.

After completion of Officer Barkyoumb's testimony, Holyoke police Officer Anthony Brach testified that, among other things, he, not Officer Barkyoumb, had selected the Eclipse as the meeting-point marker after he saw its driver park in the Holiday Inn parking lot. Although he did not know the driver's identity, he testified that he selected the Eclipse as the marker because he saw the driver enter a nearby Friendly's restaurant wearing a Friendly's uniform and assumed that her car would remain parked in the lot for a long time.

After hearing all the testimony,[2] the judge granted the defendants' motions to suppress, explaining that inconsistencies and gaps in the Commonwealth's case led him to conclude that the Commonwealth had not sustained its burden of showing a permissible basis for a warrantless search of the defendants' vehicle. Chief among those inconsistencies, in the judge's view, was Officer Barkyoumb's testimony that although Shago had selected the Holiday Inn parking lot as the meeting point during the initial telephone call between Shago and the informant, Officer Barkyoumb had immediately instructed the informant to tell Shago to look for him in a white Eclipse because Officer Barkyoumb knew that the Eclipse was at that very moment in the parking lot under observation by other officers on his team. The judge thought that Shago's selection of the parking lot and Officer Barkyoumb's inability to see that lot from his location meant that Officer Barkyoumb could not possibly have known that the Eclipse was in the lot and that he could not possibly have had other officers there watching it. Officer Barkyoumb's testimony on that point, along with other inconsistencies and gaps in the

---

[2]Lopez called as witnesses the owner of the Eclipse, who testified that she could not remember when she parked her car in the lot on the relevant day, and an investigator, who testified about his efforts to interview the owner.

evidence the judge recited,[3] left him "unable to conclusively conclude, on the facts developed, that . . . an informant existed, [and] it necessarily follow[ed] that probable cause to search [the defendants'] vehicle was lacking."

The Commonwealth filed a motion for reconsideration accompanied by an affidavit from Officer Barkyoumb. In the affidavit, he identified the informant as a person named Michael Melendez and supplied other details about the manner in which the Eclipse was selected, manifestly designed to rebut what the judge had found to be inconsistencies in the testimony he gave at the hearing. Officer Barkyoumb's affidavit also placed much stronger emphasis on the need to keep Melendez's identity confidential than he had expressed at the hearing. The Commonwealth also submitted an affidavit from Melendez who said that he had been in the Holyoke area on the day of the hearing but had been fearful for his safety. Since then, the affidavit said, Federal authorities had relocated him and he was prepared to come forward and testify if necessary. Finally, the affidavit said that Melendez was the confidential informant in the case involving the defendants and had placed the call to Shago, and recited other details of his interactions with Shago and Officer Barkyoumb as he made arrangements for the sale.

The judge denied the motion for reconsideration. He began his explanation of the denial by saying that he took the Commonwealth's affidavits "at face value . . .[,] assume[d] that Officer [Barkyoumb's] affidavit and the informant's affidavit [were] true . . . [and had] no reason to think otherwise." The judge continued by saying that he regarded the motion for reconsideration as a motion for a new hearing, which, in his view, was governed by standards similar to those governing a motion

---

[3]Among them were what the judge labeled as the "coincidence" that Shago selected a drop off point so "exceptionally" close to the apartment complex where Officer Barkyoumb and the informant were meeting. He also noted that the Commonwealth presented no evidence that the informant had previously purchased cocaine from Shago despite the fact that, as the judge explained, "[c]ommon sense suggests that multi-ounce crack cocaine dealers do not so easily deliver such a quantity without some familiarity with the purchaser . . . ." The judge further highlighted Officer Barkyoumb's failure to obtain Pagan's cellular telephone number from the informant so that he could check the call history on Pagan's cellular telephone, which would have corroborated Pagan's contact with the informant.

for a new trial because of newly discovered evidence. Granting a new trial, or a new hearing, on that ground, the judge believed, required a showing that the new evidence was "unknown and unavailable at the time of the [original hearing] despite the diligence of the moving party in uncovering it." In conclusion, the judge stated that, particularly in view of the constitutional rights involved, a "motion to suppress is not a dry run. . . . It's not a dress rehearsal, if you will, to come back and get an adverse ruling — once an adverse ruling is obtained to try and come back and do it all over again."

2. *The initial ruling.* In reviewing the judge's ruling on the motion to suppress, we accept his decisions on credibility, *Commonwealth* v. *Moon*, 380 Mass. 751, 756 (1980), give substantial deference to his ultimate findings, and accept his subsidiary findings unless they are clearly erroneous. *Commonwealth* v. *Burton*, 450 Mass. 55, 61 (2007).

We think it clear that the judge's initial ruling on the motion essentially rested on his fundamental disbelief of the account given by the Commonwealth's witnesses regarding how the sale arrangements, arrest, and discovery of the drugs occurred. With or without the judge's careful explanation of the reasons for disbelieving that account, the judge, like any other fact finder, was entitled to believe all of what the witnesses told him, some of it, or none of it. See *Commonwealth* v. *Clark*, 65 Mass. App. Ct. 39, 43 (2005). There is no basis, therefore, for challenging the judge's initial decision.

3. *The decision on the Commonwealth's motion for reconsideration.* "It is settled that a judge has considerable discretion to reconsider prior orders, provided the request is made within a reasonable time." *Commonwealth* v. *Gonsalves*, 437 Mass. 1022, 1022 (2002). We therefore review the judge's action on the motion for an abuse of that considerable discretion. See *ibid.* In urging that the judge did abuse his discretion, the Commonwealth points to two components of the judge's oral statement of reasons for denying the motion. First was his statement that the motion amounted to a motion for a new hearing and required the Commonwealth to demonstrate the existence of new evidence that counsel could not have obtained through use of reasonable diligence before the original hearing. Second was his statement that he "assume[d]" that the affidavits signed by Officer Barkyoumb and Melendez were true.

Treating the Commonwealth's claims in that order, we agree that the reconsideration standard the judge articulated was too narrow, for "[a] judge may permit a motion that has been heard and denied to be renewed when 'substantial justice requires.' Mass. R. Crim. P. 13(a)(5), [as appearing in 442 Mass. 1516 (2004)]. Although renewal 'is appropriate where new or additional grounds are alleged which could not reasonably have been known when the motion was originally filed,' Reporters' Notes to Mass. R. Crim. P. 13, Mass. Ann. Laws, Rules of Criminal Procedure 132 (Lexis 1997), the remedy is not restricted to those circumstances. A judge's power to reconsider his own decisions during the pendency of a case is firmly rooted in the common law, and the adoption of rule 13 was not intended to disturb this authority." *Commonwealth* v. *Haskell*, 438 Mass. 790, 792 (2003).

Contrary to the Commonwealth's argument, however, neither choice of the wrong standard nor the judge's statement that he "assume[d]" the truth of the affidavits compelled the judge either to provide a new hearing or to reverse his suppression order. The judge's assumption of truth was neither a finding of truth nor a finding that the Commonwealth had carried its burden of showing a permissible basis for a warrantless search. The assumption of truth meant that parts of Officer Barkyoumb's hearing testimony were at best incomplete and at worst false, and, thus, created new credibility issues even as it resolved others. Moreover, the assumption of truth did not affect what the judge perceived to be evidentiary inconsistencies and gaps on matters that the affidavits did not touch. See note 3, *supra*.

Beyond all that, a fair reading of the judge's entire oral statement about why he denied the motion for reconsideration shows that he used the assumption of truth as a platform for his observation that a "motion to suppress is not a dry run . . . [or] a dress rehearsal . . . to come back . . . once an adverse ruling is obtained to try and . . . do it all over again." Clearly, suppression hearings involve important rights both for the individual and for the public. Accordingly, they require careful preparation and accounts of historical events that are as accurate as possible. Except in extraordinary circumstances, allowing "do-overs" or posthearing affidavits designed to clarify muddled hearing testimony undermines the integrity of the process and threatens

the efficacy of the sequestration orders entered in this case, and routinely entered in many others, in order to ensure that the testimony of one witness is not affected by the testimony of others. See, e.g., *Commonwealth* v. *Jackson*, 384 Mass. 572, 582 (1981). At the very least, we take the judge's comments about dress rehearsals to be a conclusion on his part that "substantial justice" required neither a reversal of his original decision nor a new hearing. On this record, we cannot find that the judge abused his discretion in so concluding.

> *Order allowing motion to suppress affirmed.*
>
> *Order denying motion for reconsideration affirmed.*