NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

15-P-752                                        Appeals Court
15-P-753


COMMONWEALTH  vs.  CARLOS ROSARIO (and a companion case[1]).


Nos. 15-P-752 & 15-P-753.

Essex.     May 17, 2016. - October 26, 2016.

Present:  Cypher, Blake, & Henry, JJ.


Controlled Substances.  Practice, Criminal, Identification of
    defendant in courtroom, Required finding, Disclosure of
    evidence.  Constitutional Law, Identification.  Due Process
    of Law, Identification.  Evidence, Identification, Chain of
    custody, Disclosure of evidence, Cross-examination.
    "School Zone" Statute.



    Complaints received and sworn to in the Lawrence Division
of the District Court Department on May 16, 2014.

    The cases were tried before Mark A. Sullivan, J.


    Daniel K. Sherwood for Carlos Rosario.
    Stephen E. Meltzer for Lylibeth Rosario.
    Quentin Weld, Assistant District Attorney, for the
Commonwealth.


    CYPHER, J.  In this consolidated appeal, the defendants,

Carlos Rosario and Lylibeth Rosario, appeal from their

_____

    [1] Commonwealth vs. Lylibeth Rosario.

convictions for distribution of heroin in violation of G. L. c. 94C, § 32(a), and a drug violation near a school or park in violation of G. L. c. 94C, § 32J. In addition, Carlos[2] was charged with possession of heroin in violation of G. L. c. 94C, § 34. The defendants filed a motion in limine to exclude any in-court identification of the defendants, which was denied. They argue that the trial judge committed error by admitting the confidential informant's in-court identification in the absence of any pretrial identification procedure. They also argue that the chain of custody was inadequate to connect the drug evidence presented at trial to this case and, therefore, the evidence was insufficient to prove the drug charges beyond a reasonable doubt. Lylibeth also argues that she was not given pretrial notice of a map offered by the Commonwealth and admitted in evidence that supported the school zone charge. We affirm both defendants' convictions.

1. Background. On May 15, 2014, the Lawrence police department's drug enforcement unit (unit) was conducting supervised controlled buys with the assistance of a paid confidential informant named William Demers. Detective Carmen Purpora searched Demers and the female who accompanied him for money and contraband before each controlled buy and then gave

---

[2] We refer to the defendants by their first names to avoid confusion.

Demers marked currency to complete the drug transactions. Detective Purpora and Demers agreed that Demers would take off his hat and place it by his side to signal that a drug transaction had taken place.

That morning, Demers and the unit completed two controlled buys between 9:00 A.M. and 12:00 P.M. At around 1:00 P.M., Demers and his female companion drove to the corner of Water and Melrose Streets in Lawrence to conduct another controlled buy. Demers, who was under surveillance by the unit, exited his car and stood beside it for about ten minutes before he was approached by Carlos. Carlos initiated the drug transaction and asked Demers to follow him to a house across the street at 129 Water Street. Detective Purpora and Demers saw a woman standing outside the house who was later identified as Lylibeth, Carlos's mother. Carlos, Lylibeth, and Demers walked inside the house to the kitchen where Carlos asked Lylibeth to give Demers the drugs. Lylibeth left the room and returned a minute later with a scale and a bag of heroin. Demers gave twenty dollars to Carlos for the bag of heroin then left. Demers was in the house for approximately three to four minutes. After leaving the house, Demers signaled to the unit that a drug transaction had occurred.

Following the controlled buy, Demers drove to a prearranged location where Demers, the woman accompanying him, and his

vehicle were all searched.  At that time, Demers handed Detective Purpora a plastic bag containing a brown substance that the detective believed was heroin.  Detective Purpora radioed other officers and told them to place the defendants in custody.  When Carlos was placed in custody, the police found two additional plastic bags containing brown powder in his possession.

Later that day, Detective Purpora brought the three plastic bags of brown powder to the Lawrence police department.  There, he logged the narcotics on an evidence sheet, placed the narcotics into a heat sealed bag, put the sealed bag into a yellow manila envelope, and placed that envelope into an evidence locker.  At trial, Detective Purpora testified that the manila envelope was labeled with the log number referring to the case, 14-003794, the names of both defendants, and his name. Log number 14-003794 also corresponds to a detailed police report of the controlled buy.

Sarah Clark, a scientist in the Massachusetts State police forensic services group, testified that on August 5, 2014, she analyzed the samples from the evidence seized at the controlled buy and confirmed they contained heroin and cocaine.[3]

---

[3] She also testified in detail regarding the lab's intake procedure and the use of unique numbers to help identify the cases that were in the drug vault.

Lawrence city engineer Theodoro Rosario testified that the distance between the house at 129 Water Street and the Boys and Girls Club at 136 Water Street is fifty feet, indicating that it was within a school zone.

2. Discussion. a. In-court identification. The defendants' pretrial motion in limine to exclude their in-court identification by Demers was denied. They appeal, arguing that the new standard for in-court identification established in Commonwealth v. Crayton, 470 Mass. 228, 241 (2014), should be applied: "Where an eyewitness has not participated before trial in an identification procedure, we shall treat the in-court identification as an in-court show up, and shall admit it in evidence only where there is 'good reason' for its admission."

The Supreme Judicial Court announced a prospective rule in Crayton to be applied in trials that commence after the issuance of the opinion on December 17, 2014. See id. at 241-242. Because the defendants' trial took place before the issuance of Crayton, the prospective rule does not apply and, instead, we evaluate the alleged errors under the law at the time of the trial. See Commonwealth v. Bastaldo, 472 Mass. 16, 31 (2015).

"We recognize that a degree of suggestiveness inheres in any identification of a suspect who is isolated in a court room. Nevertheless, such isolation does not, in itself, render the

identification impermissibly suggestive." Commonwealth v. Napolitano, 378 Mass. 599, 604 (1979), abrogated by Crayton. Prior to Crayton, long standing case law held that an in-court identification was excluded only where "it is tainted by an out-of-court confrontation . . . that is 'so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.'" Commonwealth v. Carr, 464 Mass. 855, 877 (2013), quoting from Commonwealth v. Choeurn, 446 Mass. 510, 520 (2006). See Simmons v. United States, 390 U.S. 377, 384, (1968). "An in-court identification was admissible in the absence of any prior out-of-court confrontation." Bastaldo, supra. Here, the first time Demers made a formal identification of the defendant was in court during his testimony. Demers' only out-of-court encounter with the defendants took place during the controlled buy. Demers met Carlos on the street outside of his home in broad daylight then proceeded to his apartment where he spent three to four minutes with Carlos and Lylibeth while completing the drug transaction. Demers spoke with both defendants and had an opportunity to view them from both inside and outside the house for an extended period of time. There was nothing suggestive about the controlled buy with the defendants that would create a substantial likelihood of irreparable misidentification in court.

The defendants also argue that even if Crayton is not applied, "[c]ommon law principles of fairness dictate that an unreliable identification arising from . . . especially suggestive circumstances . . . should not be admitted." Commonwealth v. Jones, 423 Mass. 99, 109 (1996). As discussed above, there was nothing unreliable about Demers' opportunity to observe the defendants.

Other arguments regarding the in-court identifications relied on by the defendants, "but not discussed in this opinion, have not been overlooked. We find nothing in them that requires discussion." Commonwealth v. Domanski, 332 Mass. 66, 78 (1954). There was no error in the admission of Demers' in-court identification.

b. Sufficiency of evidence. The defendants moved for a required finding of not guilty at the close of all of the evidence. Additionally, Carlos filed a posttrial motion for required findings. In reviewing the denial of a motion for a required finding, we examine the relevant evidence in the light most favorable to the Commonwealth and ask whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Commonwealth v. Latimore, 378 Mass. 671, 677 (1979).

i. Chain of custody. The defendants argue that there was an insufficient chain of custody to connect the substance seized

from the controlled buy to the heroin presented at trial. In reviewing the sufficiency of the evidence, we must determine whether the evidence presented supports a finding that the defendants knowingly or intentionally distributed heroin and whether Carlos knowingly possessed heroin.

Detective Purpora testified that he conducted two other controlled buys on May 15, 2014, culminating with the one in question. He stated that the controlled buy from the defendants took place at 129 Water Street at around 1:00 P.M. However, the evidence submission form, which was completed to accompany the contraband to the laboratory, referred to the general time and area where the controlled buys were conducted as 12:00 P.M. and "50 Broadway Street." The defendants view this as a fatal defect. Detective Purpora, however, had distinguished the three bags seized from the defendants from the contraband seized at the other controlled buys by writing the defendants' names on the envelope containing the heroin. Clark analyzed the contents of the envelope with the defendants' names on it and confirmed that the plastic bags seized were in fact heroin. An item of real evidence must be authenticated or identified as the thing the proponent represents it to be. See Commonwealth v. LaCorte, 373 Mass. 700, 704, (1977). "If the object is one the witness can particularly identify, it will be sufficient, see Commonwealth v. Andrews, 403 Mass. 441, 462 (1988), if not, it

becomes necessary for the witness to have placed an identifying mark or label thereon or to otherwise create a 'chain of custody' that will help authenticate the item." Commonwealth v. Herring, 66 Mass. App. Ct. 360, 365 (2006). Detective Purpora testified about where and how he seized the heroin. He also testified about the retention of the heroin and the delivery of it to the Massachusetts State police forensic services group. Finally, Clark testified as to its identity and quantity. The evidence is sufficient to permit a finder of fact to conclude that the evidence seized was in fact collected from the defendants during the controlled buy, that they knowingly distributed the heroin, and that Carlos knowingly possessed it.

"[A]lleged defects in the chain of custody usually go to the weight of the evidence and not its admissibility." Commonwealth v. Viriyahiranpaiboon, 412 Mass. 224, 230 (1992). The judge allowed the defendant to suggest to the jury in his opening statement, in cross-examinations of multiple witnesses, and in his closing argument that the alleged defect in the chain of custody should result in an acquittal. This testimony was sufficient to permit a finder of fact to conclude that the defendants committed the charged offenses.

c. School zone violation. Finally, Lylibeth argues that the judge erred by allowing the Commonwealth to admit a map and expert testimony about the map because the Commonwealth did not

provide notice of its intent to do so.  The defendant preserved the issue for appeal with a timely objection.  Therefore we review the error, if any, to determine if it prejudiced Lylibeth.  See Commonwealth v. Cruz, 445 Mass. 589, 591 (2005).

The Commonwealth did not provide the defendants with pretrial notice of the map that was admitted in evidence through the city engineer's testimony.  However, the defense had the opportunity to extensively cross-examine the engineer about the map certification process as well as the reliability of the map. "Where a defendant is able to cross-examine a witness extensively, prejudice is 'effectively' removed." Commonwealth v. Molina, 454 Mass. 232, 236-237 (2009).  Additionally, it is unlikely the defendant could show prejudice in light of the fact that she was on notice from the time of her indictment that the Commonwealth intended to prosecute the school zone violation. "There must be a demonstration of how the information would have aided the defendant 'in preparing and presenting' [her] case." Id. at 236, quoting from Commonwealth v. Stote, 433 Mass. 19, 25 (2000).  In measuring prejudice to a defendant when the prosecution has delayed its disclosure of evidence prior to trial, "it is the consequences of the delay that matter, not the likely impact of the nondisclosed evidence."  Stote, supra at 23, quoting from Commonwealth v. Wilson, 381 Mass. 90, 114 (1980).  Furthermore, the Commonwealth outlined the anticipated

substance and basis of the engineer's testimony in their opening statement and Lylibeth did not object.  We conclude there was no error in the admission of the map and related testimony, but if there was, it was not unfairly prejudicial.

<u>Judgments affirmed</u>.