NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-1197

COMMONWEALTH

vs.

MIKE JONAS.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

In 2021, following a jury trial in Superior Court, the defendant was found guilty of unlawful possession of a class B controlled substance (cocaine) with intent to distribute, in violation of G. L. c. 94C, § 32A (c).[1]  In this consolidated appeal, the defendant challenges: (1) the denial of a motion for a new trial and a motion to reconsider based on newly discovered evidence; (2) the denial of a motion to dismiss, asserting that late disclosure of evidence required dismissal; and (3) his conviction, claiming error in the failure to discharge a juror after she was seated.  We affirm.

---

[1] The defendant was also charged with unlawful distribution of a class B controlled substance, to which he later pleaded guilty.

Background.  On March 2, 2020, units from the Massachusetts State police and the Brockton police department conducted a drug interdiction operation at the Stop and Gas on Warren Avenue in the city of Brockton.  During the operation, Trooper Paul Dunderdale made an undercover, hand-to-hand purchase of cocaine from the defendant.  The operation included multiple officers in unmarked vehicles who kept visual surveillance on Trooper Dunderdale (spotters), as well as officers who stayed farther away to identify suspects and make arrests (covers).  One set of spotters observed Trooper Dunderdale from about one hundred feet away in the side parking lot of a supermarket, adjacent to the Stop and Gas.  Spotters observed that the defendant wore a dark pinstriped hat, a black hooded sweatshirt, gray sweatpants, and a pair of black sneakers.  No one else during that period of time and in that area matched the defendant's description.  Just before arresting him, spotters saw the defendant carrying a pinstriped hat in his hand.  During his arrest, officers found a pocketknife, twenty-nine small bags of crack cocaine, and $2,340 in cash on the defendant.  Among the cash found on the defendant were two twenty-dollar bills which had been marked by police prior to the operation by recording the serial numbers.

Discussion.  1.  Posttrial disclosure of audio recording.  In 2023, the defendant filed his first brief in his direct appeal.  Shortly after, the Commonwealth disclosed and provided

2

to the defendant an audio recording made by the "Callyo" application Trooper Dunderdale had used during the operation. The relevant portions of the audio recording relate to communications between Trooper Dunderdale and a cover officer and are as follows.[2]

> TROOPER DUNDERDALE:  "Alright, that's a done deal with Ghost.  Short black kid.  Celtics hat, gray sweatpants, black hoodie . . . .  He's got a Celtics pinstriped hat on, real low.  Black hoodie, gray sweatpants.  He told me his name is Ghost . . . .  Alright, he's got a Celtics pinstriped hat on, black hoodie, he's holding a soda bottle, um, gray sweatpants.  He's right in front of the 'Stop and Get Shot'. . . .
>
> COVER OFFICER:  "Is he in a Lakers hat?"
>
> TROOPER DUNDERDALE:  "Yeah."
>
> COVER OFFICER:  "He's over here."
>
> TROOPER DUNDERDALE:  "What did I say?  What did I say? . . . .  Yeah, it might have been Lakers, let me do a drive by . . . .  Oh yeah, that's him in front of Fernandez.  Right, is that who you're looking at?  I'm almost positive it's him . . . .  I can do a drive by if you want . . . .  Yeah, that's him.  Yup.  Yup, that's him.  Is that a Lakers hat?"

In light of the posttrial disclosure, the defendant filed a motion to stay the appellate proceedings.  The motion was granted, and the defendant filed a motion for a new trial based solely on the newly disclosed audio recording.  In 2024, the

---

[2] Other portions of the audio recording reveal that Trooper Dunderdale repeatedly announced variations of "I got to piss bad" during the undercover operation.

3

motion judge, who was not the trial judge, denied that motion. The defendant then moved for reconsideration of the denial after another District Court judge issued a decision in a separate matter regarding seven other defendants arrested in drug interdiction operations involving undisclosed Callyo recordings by members of the State police gang unit, including Trooper Dunderdale.[3]  After review of that decision, the defendant's motion for reconsideration was denied by the same judge who had denied the new trial motion.

We review an appeal from the denial of a motion for a new trial "only to determine whether there has been a significant error of law or other abuse of discretion."  Commonwealth v. Grace, 397 Mass. 303, 307 (1986).  See L.L. v. Commonwealth, 470 Mass. 169, 185 n.27 (2014) ("a judge's discretionary decision constitutes an abuse of discretion where we conclude the judge made a clear error of judgment in weighing the factors relevant to the decision such that the decision falls outside the range of reasonable alternatives" [quotation and citation omitted]).  A motion for reconsideration likewise calls upon the considerable discretion of the motion judge.  See Commonwealth v. Pagan, 73 Mass. App. Ct. 369, 374 (2008).  "Because the motion judge did not preside over the trial or conduct an

---

[3] The defendant was not a party to the case.

4

evidentiary hearing, and the only relevant evidence submitted . . . consisted of . . . documentary evidence, we review the denial of the motion for a new trial de novo." Commonwealth v. Mazza, 484 Mass. 539, 547 (2020). See Commonwealth v. Tremblay, 480 Mass. 645, 656 (2018) ("As the recording is documentary evidence, the judge's findings drawn from it are not entitled to deference, and we may review such evidence de novo").

"To prevail on a motion for a new trial based on new evidence, a defendant must establish 'both that the evidence is newly discovered [or newly available] and that it casts real doubt on the justice of the conviction.'" Commonwealth v. Bonnett, 482 Mass. 838, 844 (2019), quoting Grace, 397 Mass. at 305. The evidence must not only "be material and credible . . . but also must carry a measure of strength in support of the defendant's position." Grace, supra. "In evaluating whether newly discovered evidence casts real doubt on the justice of a conviction, [t]he motion judge decides not whether the verdict would have been different, . . . but whether the evidence probably would have been a real factor in the jury's deliberations" (quotations and citations omitted). Bonnett, supra.

The Commonwealth concedes that the audio recordings are new evidence within the meaning of Grace, 397 Mass. at 305. That said, we focus on the justice of the conviction. The defendant

5

first asserts that the posttrial disclosure of the audio recording of Trooper Dunderdale's undercover operation "cast[s] doubt" on the identification of the defendant as the person who sold Trooper Dunderdale two bags of cocaine because he initially described the defendant as wearing a "Celtics hat" and not the "Lakers hat" he was seen wearing just before his arrest and had in his possession when arrested. The defendant also argued that the recording undercut Trooper Dunderdale's credibility in several respects. To be sure, the recording reflects that Trooper Dunderdale repeated an inaccurate description of the defendant's hat multiple times until another trooper specifically asked whether the defendant was wearing a Lakers hat, at which time Dunderdale realized his error and confirmed the defendant was the person who sold him the drugs.

The defendant asserts that evidence of the Commonwealth's "sloppy investigation," shown through the defendant's use of a Bowden defense at trial, was strengthened by the audio recording.[4] See Commonwealth v. Bowden, 379 Mass. 472, 485-486 (1980). The defendant argues that a new trial is warranted

---

[4] "A Bowden defense refers to a defense built around the proposition that an inadequate police investigation may raise serious questions about whether the police and the Commonwealth have charged and are prosecuting the proper perpetrator, and thus may give rise to reasonable doubt about the defendant's guilt" (quotation omitted). Commonwealth v. Avila, 454 Mass. 744, 745 n.1 (2009), citing Commonwealth v. Bowden, 379 Mass. 472, 485-486 (1980).

because, in addition to the evidence at trial regarding claimed gaps in the police investigation, the jury should have been shown that officers did not know how to use their own equipment, that Trooper Dunderdale misstated the team logo on the defendant's hat three times, and that he stated multiple times that he had to use the facilities, "undermining his credibility as a serious police officer." We are not persuaded.

We discern no abuse of discretion in the motion judge's determination that evidence of the audio recording would not have been a real factor in the jury deliberations. The audio recording supported the strong evidence against the defendant. Spotters recognized the defendant as the person who approached Trooper Dunderdale's vehicle at the beginning of the operation and the same person who exited the Stop and Gas just after Trooper Dunderdale made the undercover purchase. In the recording, Trooper Dunderdale identified the defendant's clothing, including the pinstripes on his hat. In response to officers asking Trooper Dunderdale whether the defendant wore a Celtics hat or a Lakers hat, he drove by the defendant to confirm the defendant's identity as the same person who sold him cocaine just ten minutes earlier. Officers arrested the defendant as he carried the pinstriped hat. Given these facts and how they support the trial evidence, we discern no error in the judge's conclusion that there was no "substantial risk that

the jury would have reached a different conclusion had the [audio recording] been admitted at trial." Grace, 397 Mass. at 306.

Likewise, we are not persuaded that the evidence of "sloppy police work," or evidence calling Trooper Dunderdale's credibility into question, would have cast real doubt on the justice of the defendant's conviction. The judge limited evidence of the undercover operation to the sole issue the defendant was on trial for -- his intent to distribute. However, even if all evidence of the operation were excluded, "there [were] a number of indicia that [could] have been considered in the assessment of the [defendant's] intent to distribute." Commonwealth v. Montalvo, 76 Mass. App. Ct. 319, 327 (2010). "Possession of a large quantity of an illicit narcotic . . . . [i]n conjunction with the manner of packaging permit[s] an inference of an intent to distribute." Commonwealth v. Pratt, 407 Mass. 647, 653 (1990). "[T]he absence of [a smoking] device is consistent with distribution." Commonwealth v. Sepheus, 468 Mass. 160, 167-168 (2014). See Commonwealth v. Labitue, 49 Mass. App. Ct. 913, 914 (2000). "The amount of money found on a person may imply an intent to distribute. A large amount of cash certainly is probative of an intent to distribute." Sepheus, supra at 166. Here, the defendant was found with a total of twenty-nine individually

8

wrapped bags of cocaine, no devices used to ingest cocaine, and $2,340 worth of cash.  The Commonwealth's closing argument emphasized that these and other factors were strong evidence of an intent to distribute, "without considering the fact that minutes earlier, [as] Trooper Dunderdale testified, [the defendant] dealt him this bag."  Notwithstanding the defendant's Bowden defense, the Commonwealth provided ample evidence and we discern no abuse of discretion in the judge's conclusion that no real doubt was cast on the justice of the defendant's conviction.

Nor do we discern an abuse of discretion in the denial of the defendant's motion for reconsideration.  In his submission, the defendant proffered a District Court judge's decision and order regarding nondisclosure of Callyo recordings as "significant new developments" while recognizing that the motion judge was not bound by another trial court judge's decision.

The defendant did not argue to the motion judge, as he does to us, that the District Court decision did or should establish a conclusive presumption of egregious governmental misconduct applicable to his case, such as that recognized in the Hinton State Laboratory cases.  See Commonwealth v. Hallinan, 491 Mass. 730, 745-749 (2023).  Accordingly, the issue is waived on

appeal.  See Mass. R. Crim. P. 30 (c) (2), as appearing in 435 Mass. 1501 (2001).[5]

2.  <u>Late disclosure of marked money</u>.  On the first day of trial and for the first time, the police provided to the Commonwealth, and the Commonwealth in turn provided to the defendant, photographs of marked money that were "highly material" to the charge of unlawful distribution of a class B controlled substance.  The defendant objected and argued, inter alia, that these photographs were inconsistent with photographs provided prior to trial.  According to the defendant, "[the Commonwealth] provided all of the pictures of all of the money, and then at the last moment provided [photographs from] a different camera, a different picture, . . . taken at a different location with a different [background]."  As a result, the defendant moved to dismiss the charge of unlawful distribution, or in the alternative, a mistrial.

The judge agreed that the Commonwealth's late disclosure was problematic, but rather than dismiss a charge or declare a

_____

[5] Even if the issue were not waived, the District Court judge had no authority to establish such a presumption since only the Supreme Judicial Court has that extraordinary authority.  See <u>Hallinan</u>, 491 Mass. at 747-749 ("Pursuant to G. L. c. 211, § 3, we have the extraordinary power to superintend 'the administration of all courts of inferior jurisdiction' . . . .  We are satisfied that a conclusive presumption that all three elements needed to establish the first prong of the <u>Scott</u>-<u>Ferrara</u> test have been met").

10

mistrial the judge prepared to grant a continuance. However, just as the judge was about to discharge the jury, the defendant indicated that rather than a continuance on all charges, he was "prepared to go forward [solely] on the second count [of unlawful possession]." The defendant explained that the "[distribution] and the [possession] counts are completely separated [and] [b]ecause the Commonwealth is prepared, the defense is prepared, and we have a jury, we can go forward on that second [possession] count substantively." The judge accepted the defendant's proposal and excluded evidence of the marked money, concluding that it was surprise discovery. Trial proceeded on the single count of unlawful possession of a class B controlled substance with intent to distribute. The defendant pleaded guilty to the straight distribution charge over a month later.[6]

We review a judge's sanctions order pursuant to Mass. R. Crim. P. 14, as appearing in 442 Mass. 1518, (2004), "for abuse of discretion or other error of law" (citation omitted). Commonwealth v. Sanford, 460 Mass. 441, 445 (2011). See L.L., 470 Mass. at 185 n.27. "Where the Commonwealth has delayed in disclosing evidence prior to trial, our principal concern is whether the defendant has been prejudiced by the delay."

---

[6] The defendant has not appealed or challenged his guilty plea related to the distribution charge.

11

Commonwealth v. Stote, 433 Mass. 19, 22 (2000). "When the ground for a motion for a new trial 'involves late disclosure by the prosecution, without any showing of bad faith on its part . . . a defendant is required to show material prejudice from the [delay in] disclosure.'" Id., quoting Commonwealth v. Hamilton, 426 Mass. 67, 70 (1997).

After proposing that the trial proceed solely on the possession charge, the defendant argues on appeal that the judge abused his discretion in failing to dismiss the distribution charge. We disagree. The judge properly considered the delayed timing of the Commonwealth's disclosure and excluded the admission of any evidence regarding the marked money. Exclusion thus precluded any prejudice against the defendant. See Commonwealth v. Richenburg, 401 Mass. 663, 671 (1988). That the defendant proposed that the trial proceed on the possession charge also indicated that any potential prejudice was negated. See Hamilton, 426 Mass. at 71.

3. Decision not to discharge juror. At trial, but before the jury was sworn, a juror communicated to the court that she no longer wished to serve as a juror. In response, the judge brought the juror before the court and questioned her. The juror stated that she wanted to be discharged from service because she did "not agree with the process" and because she was the "only person of color" of the fifteen jurors who were

12

seated.  Following the extensive voir dire, defense counsel advocated for the juror's retention, arguing that because "the juror didn't clearly state that she couldn't make a reasonable and objective finding and judge fairly," she should not be excused.  Counsel also acknowledged that the juror's concern that she was the only person of color remaining from the venire was valid.  Ultimately, the judge declined to discharge her.[7]  The defendant now argues for the first time on appeal that the judge erred in failing to discharge the juror after she expressed her unwillingness to serve.  The claim is unavailing.

Because the defendant did not raise this issue below, we review for a substantial risk of a miscarriage of justice.  See Commonwealth v. LaChance, 469 Mass. 854, 857 (2014).  There was no such risk here.  Indeed, any such error would have been invited.  See Lannon v. Commonwealth, 379 Mass. 786, 792 (1980).  At trial, the defendant not only failed to show any risk of juror bias due to the juror's concerns, but instead argued for her retention, clearly believing that retaining the juror was in the defendant's best interest.  The judge determined, as was within his discretion, that the juror's point of view would be important and that she was not questioned any more intrusively

---

[7] The Commonwealth took no position on whether the juror should be dismissed and deferred to the "court's judgment."

than the other jurors.  See G. L. c. 234A, § 39.  Retaining the juror was in no way unreasonable and cannot support a claim that the judge's decision created a substantial risk of a miscarriage of justice.

Judgment affirmed.

Orders denying motion for a
  new trial and motion for
  reconsideration affirmed.

By the Court (Desmond,
  Sacks & Brennan, JJ.[8]),

*Paul Little*

Clerk

Entered:  September 26, 2025.

---

[8] The panelists are listed in order of seniority.